## VELTMAN and others *vs.* THOMPSON and others.

Under the statute in relation to " demands against ships and vessels," a " debt" is not "contracted" for goods furnished to a vessel so as to give the creditor a lien until they are actually delivered or furnished. An agreement to deliver the articles without actual performance, is not sufficient.

The lien and the right to attach the vessel accrue as soon as the goods are furnished, in pursuance of a previous agreement; but the lien is waived if, by the contract a credit is given extending beyond twelve days after the departure of the vessel from the port where she was when the supplies were furnished.

The lien can not exist, it seems, even by agreement of the parties, except in the manner and upon the conditions provided for in the statute.

When goods are furnished from time to time to a vessel navigating the Hudson

Veltman *v.* Thompson.

river, and making daily trips between New-York and Albany, under a previous agreement that the bills were to be paid at the end of the season, *held*, under the second section of the statute, that after the expiration of twelve days from any time when the vessel left port, there was no lien for goods previously furnished under the contract.

APPEAL from the superior court of the city of New-York. The steamboat "Alida," owned by William R. McCulloch, was run as a passenger boat on the Hudson river, leaving New-York for Albany on Mondays, Wednesdays and Fridays, from April to October, 1847; and this was an action on an attachment bond executed by the defendants on the discharge of the Alida from a seizure under an attachment which had been issued to the sheriff of New-York, pursuant to the provisions of the statute (2 *R. S.* 493) in relation to "demands against ships and vessels."

It was proved that the attachment was issued on the *second* day of October, 1847, on the application of Rockefeller and Harris, and that on the 7th day of October, 1847, the plaintiffs Veltman & Co. delivered an account in writing of their demand, accompanied by their proper petition, affidavit and proof, under section 10 of said statute, and thereby became attaching creditors under the proceedings.

Tuthill, a witness, and steward of the boat, testified that sometime in April, 1847, he made an arrangement with the plaintiffs to send for crockery whenever he wanted it, and at the end of the season they were to collect the bills. Accordingly Tuthill sent for crockery as he wanted it, and when received the bills were sent, for his convenience, to compare with the goods received. One part of the bill of goods, amounting to *thirty-five* dollars, was ordered and delivered before this agreement was made; the residue of them were delivered at short intervals, from May 11 to September 25, 1847. The whole amount during the month of September was less than $50. The last trip of the Alida, out of the port of New-York, was on the 1st of October, and on the 2d of October she broke her engine, and did not leave New-York again that year.

On the trial the plaintiffs had a verdict for $598,92, on which judgment was rendered. The defendants appealed to this court.

*A. Taber*, for appellants.

*G. M. Spier*, for respondents.

TAYLOR, J.   The statute under which these proceedings were instituted provides, that "whenever a debt, amounting to fifty dollars or upwards, shall be contracted"· in the manner therein specified, "such debt shall be a lien," &c.   In this case it becomes an important matter to determine when the debt was contracted, within the meaning of the statute.   The agreement was made about the 15th of April, and in one sense the debt was contracted at that time ; but it is manifest that the statute has relation to a subsisting debt for supplies, materials or labor, furnished vessels, and not to the initiatory bargain out of which the debt may arise.   On this point the reasoning of Judge Betts in the case of the *Delaware and Hudson Canal Company* v. *The Alida* is very conclusive.   The opposite construction, says he, would subvert the whole  design and·policy of the privilege, which is intended to give security for labor and materials actually put to vessels, and not to the  mere contract or  stipulation to supply them.   The contract may be entered into in anticipation of the time when the vessel is to receive repairs or supplies, and she may continue her business, leaving the port where the contract is made, until the time agreed upon for its fulfilment. Preparations may be made, and  materials  provided, in accordance with a previous stipulation, while the vessel is pursuing her regular course of business from port to port, for months perhaps, and then when she has received them to hold her discharged from liability, on the ground that she had departed from the port more than twelve days after the contract was made, would render the assurance held out by the act to creditors a sheer delusion.   Such a construction, too, would be adverse to the plain  meaning of the  act ; for the debt must be contracted for work *done* or materials or articles *furnished ;* clearly implying that the contract to work or furnish materials must be followed by an actual performance, before the lien provided by the statute attaches.

Veltman v. Thompson.

But the respondent's counsel contends that no debt was con·tracted till a sum of money became due to the respondents under the contract. The statute clearly intends that the contract shall be made by the master, owner, &c. and the work done, or materials furnished by the contractor, before any right arises under it. It also clearly implies that this debt is perfected so soon as the work is done or materials furnished; and the only difficulty in this case arises from the fact that an extended credit was given by the party furnishing the materials, beyond the actual delivery; and the decision must turn upon the question whether he has a right to give such credit, for his own convenience, and at the same time retain his privilege under the lien law.

There can be no doubt that the intention of the parties in this case was that the goods should be delivered from time to time through the season as they were wanted; but that payment should be postponed until the close of the season, and then the whole should become due and payable at one time. In this contract I presume no reference was had to the rights of the party under the lien law. Payment was anticipated from the steward, with whom the contract was made, as the agent of the Alida; but insolvency having occurred on the part of the owner, resort is had to this mode of securing the debt.

The obvious intention of the first section of the law was to provide a mode by which mechanics and others, furnishing supplies to vessels temporarily in port, might promptly and certainly secure payment for work or materials furnished, and necessary for the repair or equipment of such vessel, without the uncertainty or delay attending the ordinary process of collection of debts in our courts of law. It is a privilege granted to certain descriptions of creditors by a specific law, applicable to specific cases, in derogation of the common law, and can not be extended or enlarged by construction. (*In the matter of Denny and others*, 2 *Hill*, 220.)

The law, I apprehend, does not contemplate any credit beyond such as is absolutely necessary to perfect the contract. Whenever therefore the work is done, or the materials furnished, in pursuance of a previous stipulation, then the debt has been

contracted within the meaning of the act, and the right to attach accrues. If then the creditor gives an extended credit, thereby relieving the vessel from the existing liability, and ·she pursues her employment, leaving the port; although the parties may agree that the liability shall continue and attach at a future day, there can· be no doubt that the lien would be lost: for the condition upon which the statutory remedy is suspended no longer exists; and that condition of things can not be restored in reference to such a debt, by a subsequent agreement of the parties. I think the same doctrine would apply to an original contract, if that contract is so made, as by giving an extended credit, to take the case out of the immediate operation of the statutory remedy. The statute intends that the lien shall attach immediately on the doing of the work or furnishing the materials; the contract of the parties provides that the statutory remedy shall be suspended until a future period. The remedy must be strictly pursued, as provided by the statute, or it is lost.

If this be the true construction of the statute, there can be no further difficulty in disposing of this case. The second section provides that when the ship or vessel shall depart from the port at which she was when such debt was contracted, to some other port within the state, every such debt shall cease to be a lien, at the expiration of twelve days after the day of such departure. The judgment of the court below must be reversed.

.  .  Judgment reversed.