JACOB HAPPY, Respondent, v. ALFRED MOSHER et al., Appellants.

The provision in the State Constitution, that no person shall be deprived of property, etc., without due process of law (art. 1, § 6), does not require a legal proceeding according to the cour e of the common law, nor must there be a personal notice to the party whose property is in question. It is sufficient if a kind of notice is provided by which it is reasonably probable that the party proceeded against will be apprised of what is going on, and an opportunity offered him to defend. The opportunity to defend must not be colorable and illusory; but it matters not, though it may be difficult, so long as it is not impracticable.

The act of 1862 (chap. 482, Laws of 1862), providing for "the collection of demands against ships and vessels," is not repugnant to the above mentioned provision, as it provides a reasonable notice and gives an opportunity to litigate the lien.

An omission to state in the application to the county judge the time and place of filing the specification of the claim, does not invalidate proceedings under that statute where the vessel has not departed from the port.

The giving of the bond required by the act is a waiver of any technical defect in the prior proceedings.

The obligation of the bond can only be discharged by showing that no debt was due or that no lien existed.

Where the person furnishing the lumber accepted the note of the contractor building the vessel for the amount of the claim payable in three months, held, that this extended the time of payment in the absence of an agreement that it should not have that effect, and until the note was due proceedings could not be instituted under the act to enforce its collection.

In an action upon a bond given under the provisions of said act, in order to prove that the lumber was used in the construction of the vessel, the plaintiff was permitted to prove, under objection, the declarations and admissions of the contractor and his agent, made after the delivery of all the lumber. Held, error; that the contractor was in no sense the agent of the owner, and there was no such relation between them as to make his declarations competent against the latter or his sureties.

(Argued September 27th, 1871; decided January term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial district, affirming a judgment entered upon a verdict in favor of plaintiff, and affirming an order denying a motion for a new trial. (Reported below, 47 Barb., 501.)

This action is upon a bond given by the defendants, in order to obtain the discharge of a vessel which had been seized under a warrant of attachment, issued by the county judge of Ulster county, to enforce an alleged lien of the plaintiff thereon, according to the provisions of chapter 482, Laws of 1862. The answer contains a general denial and alleges a release of the lien.

One Caler, in March and April, 1864, was engaged at Rondout in building a barge for the defendant Mosher, and one Minerly was his foreman upon the work. During the months of March and April the plaintiff sold to Caler a quantity of chestnut lumber for the price of $247.64, which he claimed was used in the construction of this vessel; whether or not it was all so used was a controverted question.

After the lumber was delivered, the plaintiff settled with Caler for the same, and took his note. But learning at the Rondout Bank that the note was not drawn right, he returned it to Caler, and had another note drawn; and not finding Caler, so that he could sign this note, he took it home. Afterward, plaintiff's son, who was about to go to Rondout, told his mother to tell his father to leave the note where he could get it. And this was done; and without any direction from his father, the son took the note and got Caler to sign it. The note was for $368.14; dated May 28, 1864; payable in three months after date, to the order of the plaintiff at the Rondout Bank. The son retained the note two weeks, and then delivered it to his father, the plaintiff. The plaintiff kept the note, and never, down to the day of the trial, offered to return it to Caler.

The plaintiff's attachment proceedings were instituted on the 11th of July, and the bond sued upon, signed by Mosher and two sureties, was executed on the 21st day of July. The bond was conditioned "to pay the amount of any and all claims and demands which shall be established to be due to the said Jacob Happy, and to have been a subsisting lien upon said vessel," pursuant to the act of the legislature above referred to.

At the time these proceedings were instituted the vessel was upon the ways, unfinished. At the close of the plaintiff's evidence, and also at the close of all the evidence, the defendants moved for a nonsuit on the ground "that there was no sufficient evidence that any of the plaintiff's materials went into the vessel; that the taking of the note extended the time of payment to the maturity of the note, and also destroyed the alleged lien." The court denied the motion, and the defendants excepted.

The court charged the jury, among other things, that the plaintiff was entitled to recover for such portion of his lumber as was used in the building of the barge in question. That it was a question of fact for them to determine what amount, if any, of the plaintiff's lumber was used in the vessel, and what was its value. That if Minerly, when he stated to or agreed with the plaintiff that 8,800 feet of the plaintiff's lumber had gone into the boat, was Caler's agent speaking by his authority, they were at liberty to take that statement into consideration in getting at the amount of lumber used in the vessel. That if they found that this was the only vessel being built at Caler's ship yard, it was for them to say whether this lumber or part of it went into this vessel. That if Minerly finished this vessel and put the plaintiff's lumber in it, the defendants are liable in this action. That if the plaintiff took the note in evidence as payment, or as an extension of the time of payment, the plaintiff cannot recover. But if the plaintiff took the note without intending to extend the time of payment, he has not waived his lien, and that fact is not a bar to recovery in this action. To which portions of the charge the counsel for defendants excepted.

The jury rendered a verdict for plaintiff for $246.40. The counsel for the defendants moved, upon the minutes of the court, to set aside the verdict, and to grant a new trial upon the exceptions and for insufficient evidence, and the court denied the motion. Other facts appear in the opinion.

*S. L. Stebbins* for appellants. The act of 1862 is uncon-

stitutional, and the bond therefore void. (*Brookman* v. *Hamill*, 4 Hand, 554.) The application was insufficient, and the county judge acquired no jurisdiction. This point is available here, although not taken on trial. (*Veltman* v. *Thompson*, 3 Comst., 438; *Palmer* v. *Lorillard*, 16 Johns., 343, 353, 354; *Beekman* v. *Frost*, 18 id., 544, 559, 569, 565; *Sandford* v. *Granger*, 12 Barb., 392, 403; *Caldwell* v. *Colgate*, 7 Barb., 253; *Brookman* v. *Hamill*, 4 Hand, 554, 564, 565.) The reception of evidence of the declarations of Minerly was error. *Paige* v. *Cagwin*, 7 Hill, 361, 369, 379, 380; *Hurd* v. *West*, 7 Cow. (3d ed.), 752, 759 and *note; Kent* v. *Walton*, 7 Wend., 257; *Whittaker* v. *Brown*, 8 Wend., 490; *Bristol* v. *Dunn*, 12 Wend., 142; *Beach* v. *Wise*, 1 Hill, 612; *Stark* v. *Boswell*, 6 Hill, 405; *Christie* v. *Bishop*, 1 Barb. Ch., 115; *Brisbane* v. *Pratt*, 4 Denio, 63; *Smith* v. *Webb*, 1 Barb., 230; *Brown* v. *Mailler*, 2 Kern., 118; *Westlake* v. *St. Lawrence Mutual Ins. Co.*, 14 Barb., 206, 213; *Smith* v. *Schanck*, 18 Barb., 344; *Booth* v. *Swezey*, 4 Seld., 276; *Tousley* v. *Barry*, 16 N. Y., 497; *Osborn* v. *Robbins*, 37 Barb., 481; *Jones* v. *East Society M. E. Church of Rochester*, 21 Barb., 161; *Cuyler* v. *McCartney*, 33 Barb., 165; *Schenck* v. *Warner*, 37 Barb., 258; *Foster* v. *Beals*, 21 N. Y., 247; *Vrooman* v. *King*, 36 N. Y., 477; *Earl* v. *Clute*, 1 Keyes, 36; *Cuyler* v. *McCartney*, 40 N. Y., 221, 235.)

*Erastus Cooke* for respondent. The lien created by the act of 1862 is valid. (*Sheppard* v. *Steele*, 43 N. Y., 52; *Brookman* v. *Hamill*, 43 N. Y., 552; *People's Ferry Co.* v. *Beers*, 20 How., 393, 402; *Maguire* v. *Card*, 21 How., 248; *Allen* v. *Newbery*, 21 How., 245.) There being a valid lien, the county judge had jurisdiction. Technical objections, affecting the regularity of proceedings, cannot be raised for the first time upon appeal. (*Mabbett* v. *White*, 12 N. Y., 451; *Elwood*, v. *Deifenday*, 5 Barb., 406; *Numan* v. *Wells*, 17 Wend., 142, 143.) The giving the bond was an admission of the regularity of the proceedings. (*Coleman* v. *Bean*, 3 Keyes, 94.)

Taking a note simply, would not discharge the lien. (*The Nestor*, 1 Sumn., 73; *Hill* v. *Beebe*, 13 N. Y., 557.)

EARL, C. It is claimed that the statute of 1862, by which this lien was created and under which the attachment proceedings were instituted is void, as in conflict with the constitutional provision which provides that no person shall be deprived of his property " without due process of law."

In *Sheppard* v. *Steele* (43 N. Y., 52), it was held that this statute was not unconstitutional as infringing upon the right of trial by jury. As appears by the opinion of Judge FOLGER, it was claimed on the argument of that case, by the counsel for the appellant, that the statute was also void because it deprived a person of property without due process of law. While this latter constitutional provision was probably not much discussed before the court, and may not have been particularly considered by the court, yet it was involved in the case and was brought to the attention of the court; and hence, I think, we should hold that the case determines that the statute under consideration is not in conflict with either of the constitutional provisions referred to.

If this were an open question, I should without any hesitation reach the same conclusion. An approved definition of due process of law is " law in its regular course of administration through courts of justice." (2 Kent Com., 13.) It need not be a legal proceeding according to the course of the common law; neither must there be personal notice to the party whose property is in question. It is sufficient if a kind of notice is provided by which it is reasonably probable that the party proceeded against will be apprised of what is going on against him, and an opportunity is afforded him to defend. (*In the Matter of the Empire City Bank*, 18 N. Y., 200; *Rockwell* v. *Nearing*, 35 N. Y., 302.) It matters not that it may be difficult for him to defend under the law, so long as it is not impracticable for him to do so by the use of such reasonable efforts as the owners of property may generally be supposed to be capable of. His opportunity to

defend, however, must not be merely colorable and illusory.

This statute provides for notice of the proceeding by publication, under such circumstances that it is reasonably certain that the opposite party would be apprised of the claim made against him. And it provides that the party may, before sale of the property, have the claim and right to the lien litigated by giving the bond required.

It is claimed that the party is deprived of due process of law because he is first required to give a bond before he can defend against the claim. This doubtless presents a practical difficulty in some cases. But in most cases the owner of the property can give the bond, and the cases would be very rare in which he could not do it. Laws must furnish general rules, and are to be judged by their general effects and tendencies, and not by the particular mischief which, under possible circumstances, they may occasion.

Laws in reference to cattle distrained damage feasant, in reference to strays, and to enforce the responsibility of stockholders in banking corporations, under chapter 226, Laws of 1849, are quite anomalous in their operation and mode of procedure, and yet they have never been considered as depriving a party of due process of law.

It is also claimed that the proceeding which resulted in giving the bond sued on was void, because the application to the county judge did not state the time and place of filing the specification of the claim. Section two of the act requires such specification to be drawn up and filed only in case of the departure of the vessel from the port at which the debt was contracted. And as, in this case, the vessel had not departed, the specification was not necessary to be made or filed, and hence was not required to be mentioned in the application. Besides, the giving of the bond was a waiver of any technical defect in the prior proceedings. The statute creates the lien, and it exists before any proceedings are instituted, and independently of such proceedings; and the bond is conditioned to pay

the lien which existed at the time the application was made. The obligation of the bond can therefore be discharged only by showing that no debt was due or that no lien existed.

The remaining questions to be considered in this case are more serious. After all the lumber was delivered, the plaintiff settled with Caler, and took his note for the amount due him ; he took it to the bank, and learning that it was not drawn right, returned it to Caler. He then had another note drawn, and, not finding Caler, he took it home, and his son, as is claimed, without his knowledge or consent, took it and got Caler to sign it. The son kept it two weeks and then delivered it to the plaintiff, who then first knew of its execution. The note is dated May 28, 1864, payable in three months from date. The plaintiff testified that he did not accept it as payment, but that he kept it and never offered to return it. The application to the county judge was made, the warrant to the sheriff was issued, the vessel was seized, and the bond sued on was given in the month of July, and this action was commenced soon thereafter.

It matters not that the plaintiff's son took this note without his knowledge or consent. His son assumed to act for him, and when he learned what his son had done for him he adopted and ratified his act by taking and keeping the note. Hence, it must have the same force and effect as if the plaintiff himself had taken it. It did not operate as payment of the debt for which it was given, and probably did not destroy the lien upon the vessel, as that could continue for six months notwithstanding the note. But it extended the time of payment of the debt until the note matured. Such is always the effect of a note upon time for an antecedent debt, and here there is no proof even that the parties agreed or understood that it should not have this effect. The plaintiff could not take and hold this note, and secretly, in his own mind, intend that it should have no effect.

Until this note matured, therefore, the plaintiff could not sue Caler for the debt, and he could not institute the proceeding before the county judge to enforce its collection.

The condition of the bond is not to pay claims which were liens only, but such claims as were both *due* and liens at the time the application to the county judge was made.

The proceeding before the county judge was, therefore, prematurely instituted, and the plaintiff should have been nonsuited. There was nothing in reference to this question to be submitted to the jury.

Upon the trial it was incumbent upon the plaintiff to show that this lumber had actually been all used in the construction of the vessel before the application was made to the county judge on the 11th of July. And this he was bound to do by evidence competent as against the defendants. Whether all this lumber was used in the construction of this vessel was seriously controverted upon the trial; and to prove that it was, the plaintiff was permitted, against the objection of the defendants, to give evidence of the declarations and admissions of Caler and his agent, Minerly, made after all the lumber had been delivered. I cannot doubt that this was error. Caler was in no sense the agent of Mosher. He had a contract to build the vessel, and there was no such relation between him and Mosher as would make his declarations competent against the latter, and they were no part of any *res gestæ* so as to make them competent. They were not made when the debt was contracted, but afterward. Assume that they were made in a settlement between Caler and plaintiff before the lumber had been delivered and used, they would then have been good evidence against Caler if he had been a party to the record. But as against these defendants the delivery and use of the lumber must be proved by competent common-law evidence, and cannot be established by the admissions of Caler or his agent, however solemnly made.

Upon the two grounds discussed, I am for a reversal of the judgment, and ordering new trial, costs to abide event.

All concur.

Judgment reversed.