James D. Mott, Appellant, *v.* Gilbert Lansing et al., Respondents.

The fact that work done upon a vessel was done upon the personal credit of the owner does not, unless by express agreement to that effect, impair or affect the lien thereon given by the act "to provide for the collection of demands against ships and vessels." (Chap. 482, Laws of 1862.)

Nor does the fact that time for payment is given prevent the attaching of the lien or affect its validity, providing such time does not extend beyond that specified in the act for the existence of the lien. (§ 2.) The only effect of giving time of payment is that it postpones the power of the claimant to enforce the lien until the debt becomes due.

To preserve his lien the claimant is not required to have possession of the vessel; and his consent to its departure from port is not a waiver of the lien.

*Veltman* v. *Thompson* (3 N. Y., 438) distinguished.

(Submitted October 1, 1873; decided January term, 1874.)

Appeal from order of the General Term of the Supreme Court in the third judicial department, reversing a judgment in favor of plaintiff entered upon the report of a referee. (Reported below, 5 Lans., 516.)

This was an action upon a bond, executed by defendants, given to discharge a canal boat from a warrant of attachment.

The referee found the following facts, among others:

That, in the month of May, 1868, the plaintiff, who was then engaged in building and repairing canal boats at Fort Edward, Washington county, at the request of one Lewis Ketchum made repairs and furnished materials in repairing a certain canal boat called the J. T. Cox, then belonging to Ketchum, to the amount of $150 in value. That it was understood and agreed between the plaintiff and Ketchum, while the repairs were being made and materials furnished, that the plaintiff should be paid for the same to the amount of fifty dollars as soon as the said boat was repaired, and the said Ketchum could go with the boat to Whitehall and remit the said sum of fifty dollars from that place (where Ketchum represented he could obtain the money); and that the plaintiff would get the said fifty dollars in about three days after Ketchum should leave Fort Edward with the boat thus repaired. The balance of said indebtedness Ketchum agreed to pay in installments, from time to time, during the period of two months after the completion of the repairs. The said Ketchum has not paid for said repairs made and materials furnished, or any part thereof.

That, on the 4th day of June, 1868, or within twelve days after the departure of said boat from the plaintiff's boat-yard, where the repairs were made, the plaintiff duly made and filed specifications of lien upon said canal boat.

Upon application, duly made to one of the justices of this court, a warrant of attachment was duly issued, and said canal boat was seized by virtue thereof. Said boat was seized by the sheriff under said attachment, and, thereupon, the said defendants duly executed and delivered the bond in suit.

It was admitted on the trial that the attachment proceedings were regular.

He also found that the work was done and materials furnished by the plaintiff on the personal credit of said Ketchum, except to the amount of fifty dollars; that to that amount plaintiff had a valid and subsisting lien, and directed judgment for that sum, with interest. Judgment was perfected accordingly.

*Edgar Hull* for the appellant.

*J. W. Hill* for the respondents. Liens created by statute are in derogation of common-law principles. (3 Pars. on Con., 241.) Where credit is given there can be no common-law lien. (2 Kent's Com., 815; 3 Pars. on Con., 248; *Fielding* v. *Mills*, 2 Bosw., 489.) Statutes are to be construed in reference to the principles of the common law. (1 Kent's Com., 513.) Chapter 482, Laws of 1862, grants privileges in derogation of the common law, and it cannot be extended or enlarged by construction. (3 N. Y., 441.) In the exposition of statutes the intent of the legislature is to be deduced from a view of the whole and every part of the statute, taken and compared together. (1 Kent's Com., 510.) Where a lien has been suspended it cannot afterward attach, even by agreement of the parties. (*Veltman* v. *Thompson*, 3 N. Y., 438.) It was error to permit plaintiff on his examination to read the entries from the book of items of account without showing that they were original entries, or that they were correctly made, and a necessity existed for so reading them. (*Halsey* v. *Sinsebaugh*, 15 N. Y., 485; *Russell* v. *H. R. R. R. Co.*, 17 id., 134; *Marcly* v. *Shultz*, 29 id., 346.) The books could not be received as evidence under the rule that they were books of account and evidence of themselves. (*Vosburgh* v. *Thayer*, 12 J. R., 461; 7 Barb., 107; 2 Phil. Ev. [C. & H. Notes], 375.)

Earl, C. The various exceptions taken to the mode in which the plaintiff proved his claim can be of no avail here, as the referee only allowed fifty dollars of the claim, and that there was so much due was not disputed on the trial. Two defences were relied upon on the trial, one that the work upon the boat was done upon the personal credit of the owner, Ketchum, and the other, that the plaintiff gave about three days' time of payment for the fifty dollars. Unless one or both of these defences were good, the referee made a proper decision, and the General Term should not have reversed it.

By chapter 482 of the Laws of 1862, it is provided, that when the owner of any vessel shall contract a debt for repairs such debt shall be a lien upon such vessel. No act is required to be done by the one making the repairs to create the lien. The statute itself creates the lien and it exists the moment the work is done. There is nothing in the statute requiring that the work shall be done upon the credit of the vessel before the lien can attach. A party repairing such a vessel always has two remedies, one *in personam* against the owner and the other *in rem* against the vessel, unless by express agreement he has in some form relinquished one. Such is the common law rule in all cases where a mechanic does labor upon any article intrusted to him. He may enforce his lien against the article or enforce his claim for the work against the owner. It does not impair his lien that he did the work upon the personal credit of the owner, neither is there anything in the statute providing, expressly or by implication, that the lien shall not attach in case any time of payment is given to the debtor. The statute provides that, whenever a debt of the nature specified shall be contracted it shall be a lien, and the debt is just as effectually contracted whether it be payable presently or at a future day.

There is no limitation in the statute as to the length of time during which the lien may continue to exist, except what is found in section 2. That provides that the lien shall cease to exist at the expiration of six months from the time the debt was created, unless, at the expiration of the six months, the vessel shall be absent from the port at which the debt was created, in which case the lien shall continue until the expiration of ten days after the vessel shall next return to the port. Thus, in case the vessel be absent from the port, the lien may be continued for several years; and the claimant need not have possession of the vessel during any portion of the time, and need do nothing to preserve his lien, except in the single case mentioned below. While the lien exists, the claimant may attempt to collect his debt from the debtor, and if he fails, may still enforce his lien. An attempt to

enforce one remedy does not destroy the other. He may give time of payment; and, provided such time does not extend beyond the existence of the lien, he may at the expiration thereof still enforce the lien. As he cannot procure a warrant to enforce his lien until his debt be actually due, it must become due before the lien ceases to exist by the limitation contained in the statute. But the lien will cease to exist in case of the departure of the vessel from the port, unless within twelve days thereafter, the claimant shall cause to be drawn up and filed in the proper office the specification mentioned in section 2. In case the vessel does not depart from the port, the specification is not required, In case she does depart, then the specification is required, and after it has been drawn up and filed the lien will continue to exist without any further action on the part of the claimant, for at least six months, as provided in the earlier portion of the section. To preserve this lien, the claimant is not required to have possession of the vessel during any portion of the time. I, therefore, find nothing either in the policy or the letter of the statute which deprives a party of his lien, in case he does the work on the vessel under a contract giving the debtor any brief time of payment The only effect of such leniency, on the part of the claimant, would be to postpone his power to enforce the lien until the debt shall become due. (*Happy* v. *Mosher*, 48 N. Y., 313.) But the General Term was constrained to take a different view of this case, upon the authority of the case of *Veltman* v. *Thompson* (3 N. Y., 438), which was regarded as controlling. I think, it is quite clear that nothing was decided in that case in conflict with the views above expressed. That decision was made under the provisions of the Revised Statutes in reference to the collection of demands against ships and vessels. (2 R. S., 493.) Those statutes contained no provision as to the length of time during which the lien should continue to exist, except that it should cease to exist when the vessel left this State and at the expiration of twelve days after her departure from the port where the debt was contracted. In that case, the

vessel was a passenger boat running between New York and Albany, making daily trips between April and October. In April, the steward of the boat made a bargain with the plaintiffs for a supply of crockery from time to time, as he should want it, the bills to be collected at the end of the season. Under this bargain, crockery was supplied from time to time, from May eleventh to September twenty-fifth, and at the end of the season proceedings were instituted to enforce the lien, and the lien was enforced ·for the whole amount of crockery furnished during the season. The plaintiffs claimed that the debt was, within the meaning of the statutes, contracted when it became due at the end of the season. This construction of the statutes was repudiated by the court, and it held that the debt was created as to each parcel of crockery when it was furnished, and that as to each parcel, the lien ceased to exist after twelve days from the departure of the vessel from her port. The point decided is inserted in the head note by the learned reporter, as follows : " When goods are furnished from time to time to a vessel navigating the Hudson river, and making daily trips between New York and Albany, under a previous agreement that the bills were to be paid at the end of the season, *held,* under the second section of the statute, that after the expiration of twelve days from any time when the vessel left port there was no lien for goods previously furnished under the contract." It will be seen, by a careful examination of that case, that it is in entire harmony with ·the views above expressed.

The order of the General Term must be reversed and judgment upon report of referee affirmed, with costs.

Gray, C. The only material question in this case is whether the agreement, on the part of the plaintiff, that Ketchum might take the boat when the repairs should be completed and run her to Whitehall and from thence remit fifty dollars, which it was supposed would be accomplished within about three days after the departure of the boat, was

a waiver of his statute lien for that amount. The referee has found, as a fact in the case, that the work and materials to this amount were not done and furnished upon the credit of Ketchum, and, impliedly, that it was done relying upon the security of his statute lien upon the boat. The statute, doubtless, contemplates an absence of such vessels from the port of repairs without impairing the lien upon them for the materials furnished and work done in accomplishing the repairs; and it would be an unreasonable construction of the statute to hold that such absence must be occasioned by the wrong act of the owner and against the consent of the repairer, or the statute lien is lost. (*Hitchcock and others* v. *Dunning & Browning*, 6 Hill, 494.) It could never have been supposed that vessels would be kept in port six months after the completion of repairs, and yet the statute provides for the continuance of the lien for that length of time after the debt is contracted, and then if the vessel shall be absent from the port the lien is extended for the space of ten days after she shall return, provided the person having the lien shall, within twelve days after such departure, have caused to be drawn up and filed in the office of the clerk of the county, etc., a sworn specification of the lien. (Sess. Laws 1862, 956, 957, §§ 1 and 2.) These provisions, in relation to the departure and absence and return of a vessel, and the continuance of the lien thereon, contemplate a departure with the consent of the lien-holder, and necessarily result in giving a credit to the debtor and at the same time relying upon his statute lien as a security for payment. If a repairer of a vessel at Albany should consent that its owner might sail it from that port to Troy and back, to be absent three days, it cannot be that, if the journey should be performed within the time, he could, in the meantime, attach the vessel; and if, by consenting to such absence, he should lose his lien, the provisions of the statute would be inapplicable to any other than a tortious departure and absence. (See *Phillips* v. *Wright*, 5 Sand., 642, 660.) The necessity of filing a specification of the lien in this case was obviated by the issuing

and service of the attachment before the twelfth day after the departure of the boat.

We are referred to *Veltman* v. *Thompson* (3 N. Y., 438), as an authority in support of the defendants' position, that the plaintiff had waived his lien. In that case there was a departure of the vessel from the port where the supplies were furnished, and a return to it three times each week from April to October first. The goods were delivered at short intervals from May eleventh to September twenty-fifth; and because, by the agreement between the parties, it was held that an extended credit was given covering the period of the several departures from and returns to the port of supply, and until the end of the season for navigation for all the goods delivered, the court held that the party furnishing the goods had no lien upon the boat. The cases are unlike in facts as well as in principle.

The judgment appealed from should be reversed, and the judgment entered upon the report of the referee, affirmed.

All concur.

Order reversed, and judgment accordingly.