MONCURE v. DUBUCLET. See Case No. 8,- 538.

MONELL (JOHNSON v.). See Case No. 7,- 399.

MONIRE v. The THOMAS MORGAN. See Case No. 6,694.

---

## Case No. 9,708.

### The MONITOR.

[9 Ben. 78.] [1]

District Court, E. D. New York.  March, 1877.

COLLISION—ON INLAND CANAL—JURISDICTION.

The jurisdiction of the admiralty court over cases of collision upon inland canals upheld upon authority.

[Cited in Malony v. City of Milwaukee, 1 Fed. 612.]

A collision occurred on the Delaware and Raritan canal, in the state of New Jersey, between the steam barge Monitor and the canal boat Estelle, whereby the latter was sunk. She belonged in New York, and a libel was filed to recover for the damages. The answer of the owners of the Monitor sets up the want of jurisdiction of the admiralty courts over such cases occurring upon canals.

Beebe, Wilcox & Hobbs, for libellant.

Benedict, Taft & Benedict, for claimants.

---

## Case No. 9,709.

### The MONITOR.

[10 Ben. 188.] [1]

District Court, S. D. New York.  Dec. Term. 1878.

MARITIME LIEN—SUPPLIES—VESSEL LEAVING PORT.

The departure of a steamboat, running between New York and Stuyvesant-on-the-Hudson, from New York on her daily trip is a "leaving of the port," within the language of the statute of New York of 1862, c. 482, in relation to liens on domestic vessels; and specifications of lien must be filed within twelve days from such departure, to make the lien valid.

In admiralty.

Henry Tompkins, for libellant.

Ten Broeck & Van Orden, for claimant.

CHOATE, District Judge. This is a libel for supplies furnished to the Monitor, in July and August, 1876. She made daily trips between New York and Stuyvesant, on the Hudson river, during the summer and until the 15th of November. Specifications of the claim were filed November 17th, 1876, in the office of the county clerk of the county of New York. The supplies were charged the

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

vessel and owners, and in fact the libellant relied on the credit of the vessel. A lien is claimed, first, by the general maritime law, and secondly, by the New York statute of [April 24] 1862, c. 482, § 2 [Laws 1862, p. 956]. The case of The Lottawanna, 21 Wall. [88 U. S.] 558, is conclusive against the general maritime lien. The state statute provides that the lien shall cease "whenever such ship or vessel shall leave the port at which such debt was contracted, unless the person having such lien shall, within twelve days after such departure, cause to be drawn up and filed specifications, etc." It is argued that the proper construction of the statute as applied to a steamboat running between one place and another within the district, is that the "departure" intended is the final departure from the port, and not her departure on her daily trip. I think the language will not admit of this construction. The words "shall leave the port" are unambiguous. They do not mean "shall leave the jurisdiction" or "the district." The vessel undoubtedly left the port of New York every day after these supplies were furnished. The specifications were not filed within twelve days thereafter. Therefore, the lien ceased. This construction was put upon the similar provision of the Revised Statutes of New York in Veltman v. Thompson, 3 N. Y. 438. Libel dismissed with costs.