CHESTER ROLLING MILLS, Appellant, *v.* THE VESSELS HOPATCONG and MUSCONETCONG, Respondents.

*N. Y. Supreme Court, Second Department, General Term, June* 28, 1889.

1. *Maritime lien.—When not lost.*   The plaintiffs agreed to furnish, and did furnish, material for the construction of two vessels but before they were completed, the contractors transferred them, with the remainder of such material, to the firm for whom they were to be built, and who from time to time paid a part of the contract price.   The contractors afterward made an assignment for the benefit of creditors, and thereupon the work upon the vessels ceased, and the transferees made no further payments to the contractors.   The materials furnished by the claimants were sold to the contractors for cash, and no part of the claim has been paid.   Before the assignment, the contractors forwarded to the claimants their promissory notes, without negotiation or agreement for an extension of credit, and without disclosing the fact of their insolvency, nor their previous transfer of the vessels and materials, nor their contemplated assignment for the benefit of creditors.   It was held that these notes, as they were executed and transmitted to accomplish a fraudulent design, had no legal effect or operation, and did not suspend action upon the original demand, nor preclude the claimants from instituting proceedings for the enforcement of their lien upon the vessels before maturity.

2. *Same.    When right of action accrued to enforce such lien.*—As the con-
tract for the materials was an entire one, though the delivery
occurred at different times, no right of action accrued to the claim-
ants, nor was the debt contracted, within the meaning of chap.
482 of laws of 1862, until the delivery of the whole of the mate-
rials.

3. *Same.    When the lien attaches.*—The lien under chap. 482 of laws of
1862 attaches to ships and vessels before they are completed and
in a condition to float.

4. *Same.    Where debt contracted.*—The debt, under chap. 482, of laws
of 1862, is deemed to have been contracted at the place where the
contract was performed and completed.

Appeal from a judgment entered on the decision of the
court at special term.

*Harvey Weed* (*E. A. Brewster*, of counsel), for appellants.

*Abbett & Fuller*, for respondents.

DYKMAN, J.—These two proceedings were instituted
under chapter 482 of the laws of 1862 for the collection
and enforcement of liens against two vessels.

The facts are similar in both cases, and they are undis-
puted, and present the same questions of law.

They may, therefore, be appropriately examined together,
and the conclusion reached will control both cases.

By the statute referred to, whenever a debt, amounting
to fifty dollars or upwards,   *   *   *   shall be contracted
by the master, owner, charterer, builder or consignee of any
ship or vessel, or either of them, within this state,   *   *   *
on account of work done or materials or other articles fur-
nished in this state, for, or towards, the building, repairing,
fitting, furnishing or equipping such ship or vessel, such
debt shall be a lien upon such vessel, her tackle, apparel and
furniture, and shall be preferred to all other liens, except
mariner's wages.

Section 2.   Such debt shall cease to be a lien at the expira-
tion of six months after the said debt was contracted, sub-
ject to a proviso having no application in this case.

No question is raised in either of these cases respecting the validity of the statute or the regularity of the proceedings of the claimants, and therefore no examination upon these questions will be necessary.

On the 23d day of July, 1884, the Hoboken Land and Improvement Company entered into a contract in writing with Ward, Stanton & Co., ship builders of Newburgh, for the construction of two iron ferry boats, at a cost of about $150,000.

Immediately after the consummation of that contract, Ward, Stanton & Co. made a contract with the Chester Rolling Mills for four hundred tons of iron ship plates and sixty tons of boiler plate iron, for the construction of these vessels, and they also made a contract with the Phœnix Iron Company for one hundred tons of iron angles, also to be used in the construction of such vessels.  The shipments of iron by the Chester Rolling Mills under the contract commenced July 16, 1884, and continued until October 17, 1884, when the whole was shipped.

The shipments by the Phœnix Iron Company commenced July 16, 1884, and continued until October 17, 1884, when the whole was shipped by that company also.

The time occupied in the transportation of the iron from the mills to Newburgh was about three days.

The contractors commenced the construction of the vessels at Newburgh in August, 1884, using the materials furnished under the contracts with these claimants, and continued work thereon until December 23, 1884, when they failed, and made a general assignment for the benefit of their creditors;

On the 15th day of November, 1884, the vessels being unfinished, and part of the iron in question on the ship-yards of the contractors unconnected with either boat, a new contract in writing was made between Ward, Stanton & Co. and the Hoboken Land and Improvement Company whereby the former conveyed to the latter the unfinished

vessels and all the material which had been procured and furnished by the claimants, which were then on the yard, and in pursuance of that contract, the Hoboken Land and Improvement Company paid Ward, Stanton & Co. $10,000 on November 15th; $10,000 on December 2d, and $10,000 on December 17th.

On the 23d day of December, when the contractors made the assignment for the benefit of creditors, the work upon the vessels ceased, and no further payments were made under the last contract.

The materials so furnished by these two claimants were sold by them to Ward, Stanton & Co., for cash, no credit being required or allowed, and no part of either of these claims in question has ever been paid.

Ward, Stanton & Co. sent by mail to the claimants six promissory notes by them to the order of the claimants, as follows: To the Chester Rolling Mills, one note, dated September 25, 1884, at three months, due December 28th, for $6,527.56; one note, dated October 17, 1884, at four months, due February 20th, for $5,000; one note, dated November 20, 1884, at three months, due February 23d, for $2,345.27; one note, dated November 20, 1884, at four months due March 23d, for $2,356.82; to the Phœnix Company, one note, dated November 21, 1884, at three months, due February 24th, for $2,522.81; one note, dated November 21, 1884, at four months, due March 24, $2,535.29.

All of the foregoing notes were produced by the claimants upon the trial, and surrendered to the court for cancellation. When the contracts for the iron were made, and also when the notes were sent to the claimants, Ward, Stanton & Co. were insolvent, and knew they were so during all that time, but they did not at any time communicate the fact of their insolvency to either of these claimants, and they were both ignorant thereof.

Neither did Ward, Stanton & Co. ever inform the claimants, or either of them, of the transaction of November 15th,

with the Hoboken Land and Improvement Company, and neither of the claimants knew anything of such transaction until after the general assignment of Ward, Stanton & Co. . Attachments were sued out by these claimants, and the vessels in question were sold, and proceedings were had for the distribution of the proceeds of the sale.

The first attachment in favor of the Chester Rolling Mills was issued February 5, 1885, upon which $6,527.56 was ordered paid. Another attachment in favor of the Chester Rolling Mills was issued April 1, 1885, upon which $470.83 was ordered paid.

The first attachment in favor of the Phœnix Iron Company, issued February 5, 1885, was dismissed, with costs.

Another attachment in favor of the Phœnix Iron Company was issued April 16, 1885, upon which $369.74 was ordered paid.

The residue of the claims of both the claimants was disallowed upon the first trial, on the ground that the notes of Ward, Stanton & Co., above mentioned, operated to extend the time of payment, and suspend the lien to a time subsequent to the issuance of the attachments.

There was no settlement between the parties when the notes above mentioned were made and forwarded, and they were sent voluntarily and without any solicitation from the claimants, and without any knowledge that they were to be given.

There was no agreement or arrangement that the notes should be given or received, and the claimants were under no obligation to receive the same.

From the judgment entered upon the first trial, both the claimants appealed to the general term of the supreme court, where that portion of the judgment which disallowed any part of the claims of the Chester and Phœnix Company was reversed and a new trial was ordered, and that reversal was based upon the ground that the giving of the notes was fraudulent, and therefore did not suspend the right to enforce

the lien, and that upon the facts found, the evidence of such fraud was conclusive.

A new trial has now been had and a judgment has been obtained as before, disallowing the portions of each claim which were not allowed on the first trial, and judgment was awarded for costs in favor of the Hoboken Land and Improvement Company against both of these claimants, who now appeal again from the judgment entered upon such trial.

The trial judge, among other things, has found that at the time of making the notes to the claimants, Ward, Stanton & Co. were indebted in the sum of at least $150,000; that their notes had theretofore, in several instances, been protested for non-payment; that the financial condition of the firm at the time of making the assignment was substantially the same as it had been for at least a year preceding, and that at the time of the making of the notes to the claimants, Ward, Stanton & Co. knew that they were insolvent, and did not communicate to either of the companies the fact of such insolvency, nor the fact that the firm had made the agreement and transfer of November 15, 1884, to the Hoboken Land and Improvement Company, and that neither of these claimants had knowledge or information of the insolvency of the firm of Ward, Stanton & Co., or that, they had made the transfer of November 15, 1884, until after the reception of the notes, and after the making of the original assignment by Ward Stanton & Co., for the benefit of their creditors.

The disposition of the case depends now, as it did on the former appeal, upon the legal effect of the reception of the notes of the contractors by the corporations, and upon that subject our views were expressed when the case was here before. Upon broad principles of justice, these notes were fraudulent and intended to accomplish a purpose beyond the scope of legitimate dealing, and a heavy imputation of fraud falls upon the makers in their execution and delivery.

They must be held to have contemplated and intended the inevitable consequences of their act. Any dishonest intention, when executed, is fraudulent, and there is neither distinction nor difference between the knowledge of an inability to pay and an intention not to pay. If a debtor knows he cannot pay, he has no intention of paying, and that is equivalent to an intention not to pay.

It is not necessary to constitute legal fraud that an actual design and intention to cheat shall be entertained. If there be an intention to perpetrate an act, the necessary consequences and result of which will be to cheat and defraud another, such intention, executed, constitutes legal fraud.

These contractors were hopelessly insolvent, and knew it. They owed at least $150,000, and were without hope of ability to pay these notes. They had transferred iron purchased of these claimants to the Land Improvement Company and had received a large sum of money therefor, and the statutory limit of time for the cessation of the lien against these vessels was six months, and yet, with a full knowledge of all these facts, they permitted these claimants to remain in ignorance of their situation, and taking advantage of a confidence which had doubtless been engendered by the appearance of prosperity and solvency, and a well-established reputation, they voluntarily forwarded to these creditors their promissory notes to extend their liability and postpone the payment of their debt, and then made a general assignment of all their property.

We cannot assent to the honesty of such a transaction, and accord to it the effect to suspend any legal rights of these claimants upon their claim under their contract and original debt.

It must be borne in mind that there is no effort here to revoke a sale made to an insolvent party. There was no stipulation for credit upon the sale to these contractors, and the sale was not on credit. When these notes were executed and transmitted the debt was all due, and there was neither

negotiation nor agreement for an extension of credit, and either party could have refused to give or receive the notes, and we discover no principle which permits the mere voluntary delivery of these notes under all the suspicious circumstances surrounding their execution, without an agreement for their acceptance, to have any legal effect or operation whatever.

The real controversy in these cases is between the claimants and the Land Improvement Company, and as between these corporations our conclusion is especially just and equitable. After obtaining the property of these claimants, the contractors made a sale of the same to the Land Improvement Company, and thus left open to the claimants only the remedy by attachment, and if by their *ex parte* efforts they are permitted to suspend the right of action of the claimants, they perpetrated a fraud upon the latter, and benefited the land company at the expense of the claimants.

It is a fact very suggestive of a fraudulent design, that $20,000 was received from the land company, and a general assignment was made by the contractors, a short time after four of the notes in question were made and forwarded.

We find no evidence to support the finding of the trial judge that the claimant settled with Ward, Stanton & Co., by taking the notes in question and in that important respect, this case differs from the case of Happy *v.* Moshier (48 N. Y. 313), and renders the decision in that action inapplicable here, because there, after the lumber was delivered, the plaintiff settled with Coler the purchaser, and took his note, and there was no suggestion of fraud, and therefore the settled rule of law was applied there, that, although the note did not operate as payment of the debt for which it was given, and did not destroy the lien, upon the vessel in the construction of which the lumber was used, as they would continue for six months in any event, yet it extended the time of payment of the debt until the maturity of the paper.

The trial judge also found that these contractors at the

time of the purchase, and also when they made these notes, intended to pay for the material, and had reasonable hopes, and believed that by continuing business they could make such payment, but we cannot yield assent to such finding; and in our view they are not only unsupported by evidence, but the testimony and the surrounding circumstances lead to a directly opposite conclusion.

Our conclusion upon this branch of the case, therefore, is, that these contractors were hopelessly insolvent to their knowledge when they drew the notes in question, and knew they could not pay them at maturity. They made no disclosure of their financial embarrassment, but left the claimants to act upon appearances of solvency. They had no sources of relief and no reasonable hope of retrieving their condition, and the law will, under all the facts and circumstances, imply a fraudulent intent in the execution and delivery of these notes without actual misrepresentation. Anonymous, 67 N. Y. 598; Roebling *v.* Duncan, 8 Hun, 502.

In the Anonymous Case (67 N. Y. 598), Judge EARL, in writing the opinion of the court, said:

"But it is believed that no case can be found in the books holding that a trader, who was hopelessly insolvent, knew that he could not pay his debts, and that he must fail in business, and thus disappoint his creditors, could honestly take advantage of a credit induced by his apparent prosperity, and thus obtain property which he had every reason to believe he could never pay for. In such a case he does an act, the necessary result of which will be to cheat and defraud another, and the intention to cheat will be inferred."

As, therefore, the execution and transmission of these notes was induced by a fraudulent design, and as fraud vitiates and destroys every transaction into which it enters, these promissory notes had no legal effect or operation, and did not suspend action upon the original demand, and the claimants had a right to institute these proceedings for the

enforcement of their liens upon the vessels at the time of their commencement.

In respect to the time of filing the lien, we think that the contract was entire, and that no right of action accrued to either of these claimants until the delivery of the whole of the iron. Therefore, the debt for the iron was not contracted, within the meaning of the statute, until the entire quantity had been delivered at Newburgh. Baker *v.* Higgins, 21 N. Y. 397; Mount *v.* Lyons, 49 id. 552; Kein *v.* Tupper, 52 id. 550.

The decision in the case of Veltman *v.* Thompson (3 N. Y. 438), is not antagonistic to this view. It was there held substantially that the contract in that case was not entire, and that the debt was created as to each parcel of crockery when it was furnished, and the following language in the opinion supports our view of the statute on this point :

" The debt must be contracted for work done or materials or articles furnished, clearly implying that the contract to work or furnish materials must be followed by an actual performace, before the lien provided by the statute attaches." * * * · " The statute clearly intends that the contract shall be made by the master, owner, etc., and the work done or materials furnished by the contractor before any right arises under it. It also clearly implies that this debt is perfected so soon as the work is done or material furnished. * * * The law, I apprehend, does not contemplate any credit beyond such as is absolutely necessary to perfect the contract. Whenever, therefore, the work is done, and the materials furnished in pursuance of a previous stipulation, then the debt has been contracted within the meaning of the act, and the right to attach accrues."

We cannot yield assent to the contention of the respondent, that under the statute no lien could attach to ships or vessels before they were completed and in a condition to float. Such a contention would defeat the beneficial intention of the statute, which was to afford additional protec-

tion and security to mechanics and material men, for services and materials furnished in the construction of vessels. And by the express language of the law, the lien is given whenever a debt shall be contracted on account of work done or materials or other articles furnished, or towards the building of any ship or vessel.

The respondents insist that these cases do not fall within the provisions of the statute, because the debt was not created within the state of New York, but, as we have seen, the contract under which the indebtedness arose, was not completed and performed until the materials were delivered at Newburgh, and therefore the debt was contracted within the state of New York.

Under the statute in question the debt is deemed to have been contracted at the place where the contract was performed and completed. Crawford *v.* Collins, 45 Barb. 269; Mullin *v.* Hicks, 49 id. 250; Garrison *v.* Howe, 17 N. Y. 465; Veltman *v.* Thompson, 3 id. 438.

After a very careful examination we find ourselves unable to concur in the conclusion reached by the trial judge. We think the notes were vitiated and rendered inoperative by fraud, and can have no legal effect or operation upon the original demand of these claimants. The entire claim of the plaintiffs in both these proceedings should have been allowed, and for the error in refusing to allow such demands, the judgment should be reversed, and a new trial granted, with costs to abide the event.

All concur.