P. Elbert Nostrand, Respondent, *v.* Mary T. Knight et al., Appellants.

The General Term has jurisdiction on appeal, in an action tried by the court, to review the conclusions of the trial court both upon the facts and the law, and in cases of reversal by it upon the facts, its determination cannot be reversed by this court, unless it appears that there was no evidence to sustain it, or that there was such a preponderance of evidence in favor of the conclusions of the trial court, that it would have constituted error of law for it to have found otherwise.

A contract for the sale of real estate by defendants to plaintiff, described the property as "all that certain grist-mill and water-power known as the C. B. Knight grist-mill property." In an action to compel a specific performance of the contract, *held*, that the inference from the language of the contract was that the grist-mill and all such property connected with it as was necessary to carry on the business was intended to be sold;

that this included not only the land upon which the mill buildings were situated and the necessary yards and structures connected therewith, but also the mill-pond, race-way, tail-race, water-rights, and other indispensable appurtenances of such a mill; and if the land upon which any of these appurtenances was located belonged to the vendor, it would be inferred that the title thereto was intended to be transferred. *It seems* that there would be no presumption that the vendor intended to convey any other title than that actually possessed by him, and if the appurtenances owned by the vendor consisted of easements alone, the presumption would be that easements only were intended to be conveyed. It appeared that said Knight acquired title under a devise to him of eight acres of land described by metes and bounds which included the land covered by the mill-pond and certain uplands adjacent thereto, upon which were located the mill and buildings connected therewith and some tenant-houses. The contract reserved the rights of tenants on the property in existing leases. The only tenants were those occupying the tenant-houses. A map of the property which included the whole eight acres was delivered by defendants to their agents who made the sale; it was marked as "mill property and water-power    *  *  *    owned by C. B. Knight." The latter had mortgaged the property under the description given in the devise, and payment of the mortgage was assumed as part of the consideration by the vendee. In the power of attorney given to the agents, the property was described as "all that certain tract of land with water-power and mill  *  *  *  known as Knight flouring-mill water-power," and the eight acres was pointed out by one of the defendants to the agents as the property intended to be sold. Subsequently a new power of attorney was executed, wherein the property was described as in the contract; this power of attorney was drawn by the agents themselves, using one of their own printed blanks, and without any intention to deviate in any material respect from the description of the property as originally offered for sale. No suggestion was then made by defendants that any material change in the description or extent of the property offered for sale was intended, and a sale was effected by the agents without suspicion on their part that the property was different in any respect from that originally placed in their hands for sale. The eight acres had never been subdivided so that any particular part, less than the whole had been known as the C. B. Knight mill property. *Held*, that plaintiffs were entitled to a conveyance of the whole eight acres.

(Argued October 13, 1890; decided December 2, 1890.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made February 12, 1889, which reversed a judgment in favor of defendants

entered upon a decision of the court on trial at Special Term and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*M. N. Kane* and *E. A. Brewster* for appellants. The order appealed from shows that the reversal was upon questions of law only, and not upon the facts. The facts are, therefore, not before this court, and unless some error of law was committed upon the trial the order must be reversed. (Code Civ. Pro. § 1338; *R. L. B. Co.* v. *Roach*, 97 N. Y. 378; *Inglehart* v. *T. I. H. Co.*, 109 id. 454; *Reitz* v. *Reitz*, 80 id. 538; *Ward* v. *Craig*, 87 id. 550; *In re K. C. E. R. R. Co.*, 82 id. 95; *Van Tassel* v. *Wood*, 76 id. 614.) The rule that a grantee who assumes the payment of a mortgage is bound as a principal debtor does not apply in a case where the grantor is not bound to pay the mortgage. (*Vrooman* v. *Turner*, 69 N. Y. 280; *Smith* v. *Cross*, 16 Hun, 487; *Thayer* v. *Marsh*, 75 N. Y. 340; *Leonard* v. *Morris*, 9 Paige, 90; *Hills* v. *Hermans*, 17 Hun, 470–473.) Where the mortgage debt forms part of the consideration of the purchase, the purchaser does become bound to pay the mortgage. (*Smith* v. *Truslow*, 84 N. Y. 662; *Door* v. *Peters*, 3 Edw. Ch. 132.) The contract itself, and the description of the property contained in it, forbid the construction sought to be placed upon it by the plaintiff, and show that only the grist-mill and water-power were embraced in it. (*Hathorn* v. *Linson*, 10 Me. 224; *Blake* v. *Clark*, 6 id. 436; *Rackley* v. *Sprague*, 17 id. 281; *Nostrand* v. *Durland*, 21 Barb. 281.)

*William W. MacFarland* for respondent. It was the duty of the General Term, after a trial by the court without a jury, to review the findings of fact and weigh the evidence, and to reverse the judgment, if error of fact should appear. (*Betsinger* v. *Chapman*, 24 Hun, 15; *Parsons* v. *Brown*, 78 N. Y. 613; *Finch* v. *Parker*, 49 id. 8; Greenl. on Ev. § 277; *Blossom* v. *Griffin*, 13 N. Y. 569, 574; *Gerrish* v. *Towne*, 3

Gray, 82.)  The court erred in admitting parol evidence to show what was known as the C. B. Knight grist-mill and water-power.  (Phil. on Ev. 739, 743 ; *Jackson* v. *Freer,* 17 Johns. 29 ; *Jackson* v. *Parkhurst,* 4 Wend. 369 ; *In re Comrs. Wash. Park,* 52 N. Y. 131 ; 1 Williams on Ex. 97 ; *Hobergham* v. *Vincent,* 2 Ves. 204, 228 ; *Doe* v. *Evans,* 1 C. & M. 42 ; *Tonnele* v. *Hall,* 4 N. Y. 140, 143 ; *Brown* v. *Clark,* 77 id. 369, 377 ; *Loring* v. *Summer,* 23 Pick. 98 ; *Thayer* v. *Willington,* 9 Allen, 292 ; *Otis* v. *Smith,* 9 Pick. 293.)  Both deeds tendered by the defendants contained a provision, by which, if the plaintiff accepted either deed, he would become absolutely bound, as principal debtor, to pay the mortgage debt.  (*Burr* v. *Beers,* 24 N. Y. 178 ; *Ranney* v. *McMullen,* 5 Abb. [N. C.] 246 ; *Trotter* v. *Hughes,* 12 N. Y. 74 ; *Collins* v. *Rowe,* 1 Abb. [N. C.] 97 ; *Binsse* v. *Page,* 1 Keyes, 87 ; *Belmont* v. *Coman,* 22 N. Y. 438.)

Ruger, Ch. J.  This action was brought by the plaintiff to compel the specific performance by the defendants of a contract to sell and convey to one A. S. Murray, certain real estate in the county of Orange in this state.  The plaintiff was the assignee of the contract, and the property to be sold was described therein as follows:  "All that certain grist-mill and water-power known as the C. B. Knight grist-mill property, including a tract of land at Round Pond, together with all rights and privileges to the waters of Round pond that the late C. B. Knight possessed in his lifetime, or belonging to said property, subject, however, to the existing leases of the present tenants now on said premises."  This contract was negotiated and executed on behalf of the defendants in 1887, by Phillips & Wells, their authorized agents.

The controversy is over the question as to the identity of the property intended to be sold under the description of the "C. B. Knight grist-mill property ; " the defendants claiming that it covered, in addition to certain rights of flowage and the land and water-rights at Round pond, the fee of less than one acre of ground covering a small part of the pond at

its outlet and the buildings thereon; and the plaintiff that it embraced about eight acres of land covered by the pond and mill buildings, and some upland adjoining in addition to the land, water-rights and easement of flowage pertaining to the property at Round pond and elsewhere. While it will not be exactly accurate, yet it will be sufficiently so for the purposes of this description to refer to their respective claims; one as embracing a one-acre parcel, and the other as covering eight acres. It will also be unnecessary hereafter to refer, particularly, to the property located at Round pond, as no dispute exists as to the character or extent of that parcel as described in the contract.

Upon the trial at Special Term, the court rendered judgment in favor of defendants, holding that the phrase "the C. B. Knight grist-mill property," covered, in addition to certain rights of flowage, the acre of land alone. Upon appeal, this judgment was reversed upon the facts by the General Term, and the defendants appealed to this court upon a stipulation.

This appeal presents but a single question, which is whether, upon the facts, the General Term was authorized to reverse the judgment of the trial court as being contrary to the weight of evidence. The question is one purely of fact and is to be determined by a consideration of the evidence in the light of the rules which govern appellate tribunals in reviewing such questions. The General Term had jurisdiction to review the conclusion of the trial court, both upon the facts and the law, and we cannot reverse its determination, unless, upon examination, we conclude that there was no evidence to support it, or that there was such a preponderance of evidence in favor of the conclusions reached by the trial court as would have constituted error of law for it to have found otherwise than it did. The evidence does not show to us any such preponderance, but, on the contrary, we are convinced that the decided weight of evidence is with the plaintiff. If we refer to the contract, we find that a clear intention is expressed to sell and convey the "C. B. Knight grist-mill property," with the

lands connected therewith and tenant-houses erected thereon, for the purposes of a flouring-mill. No ambiguity arises over the location of the property, for there is but one property at Monroe, Orange county, which fills the description, and the only difficulty arises when an attempt is made to define its boundaries. In the absence of clear and definite language in the contract upon this point, extraneous evidence becomes necessary to determine the question. Certain inferences may, obviously, be drawn from the language of the contract, bearing strongly upon the question involved in the case. Among them is the fact that a grist-mill and all such property connected with it as was necessary to carry on the business of a flouring-mill was intended to be sold. This would naturally include, not only the land upon which the mill buildings were situated, and the necessary yards and structures connected therewith, but also the mill-pond, race-way, tail-race, water-rights and other indispensable appurtenances of such a mill. If the land upon which any of these appurtenances were located belonged to the owner of the mill property, it would be inferred, under such a contract, that the title thereof was intended to be transferred upon a sale without reservations. If the appurtenances owned by the vendors consisted of easements alone, such as the right of entry upon and flowage over the lands of the others, an inference would probably not be permissible, that the title of such lands was also intended to be conveyed. In such a contract, there would be no presumption that the vendors intended to convey any other title than that actually possessed by them. The contention of the defendants, however, falls far short of a disposition to convey so much even of the mill property as they actually owned, for they seek to withdraw from the operation of the deed tendered by them, the title to the lands under the larger portion of a pond covering four or five acres, which belonged to them, and was essentially necessary to the operation of a mill in that location. The deed tendered by the defendants in fulfillment of their contract included only an insignificant portion of this land, and it is difficult to see why

any was included if the claim that a water-power only was to be sold is to be supported. The concession that the title to any such lands was included in the contract, naturally involves the conclusion that they were all intended to be embraced therein so far as the defendants' title extended.

We have also been unable to see how the language of the contract can be given its natural effect and meaning if the defendants' contention be sustained. That instrument in express terms, reserves the rights of the tenants on the property in existing leases, from the operation of the conveyance provided to be given, evidently implying that otherwise the title of the property covered by such tenant-houses would be transferred by a conveyance of the property described in the contract. As we understand the evidence, the tenant-houses are all situated on land outside of the one-acre parcel. If this be so the clause referred to will, under settled rules of construction, be deprived of any meaning or effect, if defendants' construction shall prevail.

A reference to the history of this mill property as disclosed by the proof, seems to us to remove all doubt as to the identity of the property intended to be conveyed. That shows this property was originally owned by one Daniel C. Knight as a part of his homestead farm, and was first separated therefrom in 1862, when it was devised to his son, Chauncey B. Knight, under the following description: "the following described premises being part of his homestead farm and premises," certain lands containing eight acres described by metes and bounds, and including the grist-mill and saw-mill, and also certain premises and rights of flowage at the outlet of Round pond, and certain rights of flowing lands in connection with the mill-pond embraced in such description. It appears from the maps put in evidence that this description in addition to the lands at Round pond, which were about one mile distant, embraced about eight acres of land, including that covered by the mill-pond and certain uplands adjacent thereto, upon which were located the mills and buildings connected therewith, and some tenant-houses. This map was

delivered by the defendants to their agents Phillips & Wells when the property was placed in their hands for sale and was marked as being " mill property and water-power at Monroe, Orange county, N. Y., owned by C. B. Knight." This prop- erty was owned and occupied by C. B. Knight, after it was devised to him, for a period of eighteen years, when he died, and the defendants as his heirs at law, became vested with the title. In 1872, Chauncev B. Knight mortgaged this prop- erty (with an inconsiderable additional parcel of land), under the description given to it in Daniel C. Knight's will to one, Jesse Woodhull, and this mortgage for $5,000 was outstanding and unpaid at the time the contract of sale was made, and its payment was assumed as a part of the consideration price by the plaintiff. In 1882, the defendants placed the property in the hands of Phillips & Wells, real estate brokers in New York city, for sale under a power of attorney in which it was described as " all that certain tract of land with water-power and mill in village of Monroe, known as Knight flouring-mill and water- power," and the price fixed therefor was limited to the mini- mum sum of fifteen thousand dollars. The defendants at this time placed in the agents' hands the map heretofore referred to, describing by metes and bounds the property intended to be sold, and that map not only embraced the eight acres, but this land was then pointed out by one of the defendants to the agents as the property intended to be sold by them. The agents, for a series of years were unsuccessful in their efforts to find a purchaser for such property, and finally in November, 1886, wrote the defendants in relation to the further disposition of the property and received the follow- ing reply :

" In reply to yours of the 18th would say that I understood that my contract with you had expired. *There has been no change in the property.* We continue to rent it. If you desire to keep it on your list without expense to me you may do so. C. T. KNIGHT, *Atty.*"

In 1887, Phillips & Wells again wrote the defendants sug- gesting a reduction in the selling price of the property, and

saying that if this was done they were hopeful of effecting a sale. Thereupon a new power of attorney was executed on behalf of the defendants to Phillips & Wells, wherein the property was described in the terms used in the contract, and the agents were authorized to accept $10,000 for it.

No suggestion was made by either party that any material change in the description or extent of the property offered for sale was intended to be made, and the power of attorney was executed by the defendants as it was drawn by their agents. Its sale was finally effected to the plaintiff by the agents without any suspicion on their part that the property was different in any respect from that originally placed in their hands for disposal.

The principal defendant, C. T. Knight, testifies explicitly, that in January, 1882, he placed in the hands of " Phillips & Wells for sale the property in Monroe, which was devised by my grandfather to my father," and then described it as the " mill property and water-power at Monroe, Orange county, N. Y., owned by C. B. Knight."

No satisfactory explanation is now given by him why the property described by the defendants as the C. B. Knight mill property in 1882, and consisting of eight acres of land, should, in 1887, be considered to embrace only one acre of land. The agent Wells also testifies that the eight acres described in the map given to him in 1882 by the defendants, with other property referred to, was understood to be the property constituting the " C. B. Knight grist-mill property," and the map was obviously delivered to him for the purpose of defining the property and enabling him to make a sale thereof. It is manifest from this evidence that, since 1862, the mill buildings, pond and eight acres, with the easements connected therewith, have been a distinct, separate and recognized parcel of land, and that such eight acres have never been subdivided so that any particular part has been known as the C. B. Knight mill property separate therefrom. It cannot, we think, be a matter of the slightest doubt, under the evidence, that the defendants intended to embrace the eight acres by the desig-

nation of the " C. B. Knight grist-mill property," or, but that
the plaintiff's assignor supposed he was purchasing all of
the property, which at any time went to make up a complete
and operative flouring-mill establishment.   If there be any
evidence which conflicts with this view, it is of a character so
slight as hardly to merit the description of proof.

The defendants, while expressly conceding the fact that
the description contained in the original power of attorney,
embraced the eight acres in question, now contend that when
the land was again placed with Phillips & Wells, for sale, in
1887, a different description was given of the property which
materially changed its effect.   There is no foundation in the
evidence for this claim, and in fact it is conclusively rebutted
by a comparison of the two descriptions and the positive tes-
timony of the defendants' agents.   The difference in phrase-
ology of the descriptions of the property in the several powers
of attorney is very slight, while the legal effect is undistin-
guishable upon any reasonable interpretation of the language.
The circumstance that the change in description was obviously
made by the defendants' agents upon their own printed blanks
and without any idea that they were deviating in any material
respect from the description of the property originally offered
for sale is manifestly entitled to much weight.   Even with
such change the last description conforms almost exactly with
the description of the property indorsed upon the maps
accompanying the first power of attorney.

Aside from the claim that the map referred to was not
exhibited to the plaintiff's assignor when the contract was
made and the argument attempted to be based thereon that
he could not have relied upon it in making the purchase, there
is but little evidence, and such as there is, is of a very incon-
clusive character to establish the fact that the deed tendered
the plaintiff was a performance of the provisions of the
contract.

We regard the circumstance that the map was not exhibited
to the purchaser at the time of sale as of but little significance,
in view of the fact that the defendants' agents supposed the

land offered for sale embraced the eight-acre parcel, and, presumably, so informed the purchaser. This purchaser was not called as a witness, and his absence was unexplained. But, leaving that fact to have its greatest force, it does not materially impair the strength of the case made by the plaintiff. The defendants utterly failed to show that any defined parcel of land, less than the eight acres, was ever located, known or distinguished as the " C. B. Knight grist-mill property."

Several witnesses for defendants have testified, in substance, that no part of the eight acres was used in connection with the grist-mill property, except the acre of land referred to; but this testimony was given in the face of the conceded fact that the mill-pond covered in the neighborhood of about four out of the eight acres referred to, and had always been used in connection with the mill. Under such circumstances, the evidence given was entitled to but little weight, and it seemed only to impair the effect of other testimony given by them. The same witnesses also gave evidence that, in their opinion or understanding, the " C. B. Knight grist-mill property " included only the mill building and a small part of the pond, and excluded the tenant-houses referred to in the contract, and covered only about one acre of land. There is no pretense in their evidence that the boundaries to the mill property described by them had ever been the subject of any survey or actual location, except as the starting point and one or two lines following coincided in some respects with the initial lines of the description contained in Daniel C. Knight's will. The defendants' deed, after following these lines until the mills and yards immediately connected therewith were embraced, immediately deflected from all other recognized and established lines and ran directly to the mill-pond, and after crossing it so as to include only a small parcel of the land under water, ran immediately to the place of beginning, covering less than one acre in all, and excluding nearly seven acres of land and almost the entire mill-pond from the description thus given. The lines indicated in this description are purely arbitrary and are supported by no evidence whatever.

They were never indicated by monuments, fences or visible signs of distinction and had never been described in any survey, or distinguished by acts of occupation or user as disconnected from other portions of the eight-acre parcel. There does not appear in the case any satisfactory evidence to support the lines laid down in the tendered deed, and aside from the purely conjectural opinions of the witnesses, there seems to be no fact proven which materially impairs the claim made by the plaintiff.

We are, therefore, of the opinion that the order of the General Term should be affirmed and judgment absolute ordered for the plaintiff, with costs.

All concur.

·Order affirmed and judgment absolute for plaintiff.