The Phœnix Iron Company, Respondent, v. The Vessels "Hopatcong" and "Musconetcong," their Tackle, Apparel, etc., Appellant.

The General Term has jurisdiction to review the conclusions of a trial court, both upon the facts and the law, and its determination, where it arrives at an opposite conclusion, may not be reversed here unless, upon examination, this court determines that there was such a preponderance of evidence in favor of the conclusions of the trial court as would have constituted error of law for it to have found otherwise.

Under the provision of the act of 1862 (Chap. 482, Laws of 1862, as amended by chap. 422, Laws of 1863), providing "for the collection of demands against ships and vessels," which declares that "whenever a debt * * * shall be contracted by the master, owner, charterer, builder or consignee of any ship or vessel * * * within this state * * * on account of work done, or materials or other articles furnished in this state towards the building * * * such ship or vessel, * * * such debt shall be a lien upon such vessel," unfinished vessels are subject to a lien for work done and materials furnished towards building them.

Ferry-boats are within the term "vessels" as used in said act.

When materials are furnished for and used in the construction of two vessels being built for the same party at the same time and place, a lien is given by the said act upon both, and it may be enforced in the same proceeding.

Where a foreign corporation, upon orders of a firm of ship builders in this state, delivered to the latter, at their place of business in this state, certain materials to be used in the construction of two ferry-boats, and which were so used, *held*, that the debt was contracted when the goods were delivered to the purchasers, and so was contracted within this state within the meaning of the act.

The terms of sale were cash on delivery; the purchasers, without any consultation or arrangement with the vendor, mailed to it their firm notes for the amount of the purchases, payable at times beyond the six months' limit fixed by statute, and so when the lien created by the act would have expired, the vendor accepted the notes, supposing the purchasing firm to be solvent. It was in fact, to the knowledge of its members, insolvent, and prior to the making of the notes, other notes of the firm had been protested. The next day said firm sold and transferred the ferry-boats and all the materials in their yard to the corporation for whom they were building them, agreeing to go on and finish the boats, and deliver them freed from any lien. About a month thereafter said firm made a general assignment for the benefit of creditors. *Held*, that the evidence justified a finding that said firm mailed said notes with intention not to pay the same, and with the fraudulent design, by the extension of time of payment, to discharge the lien; that the fraud relieved the vendor from the extension of credit the notes purported to create; and so, that it was entitled to enforce its lien.

(Argued April 20, 1891; decided June 2, 1891.)

APPEAL by the Hoboken Land and Improvement Company from an order of the General Term of the Supreme Court in the second judicial department, made May 13, 1889, which reversed, upon the facts and upon the law, a judgment in favor of the defendant, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Leon Abbett* for appellant. It was a fatal error for the General Term to reverse the judgment of the Special Term, both upon the facts and upon the law, because the facts were not before it. There was an absence of the proper certificate in the case on appeal. (*Smith* v. *A. L. Ins. Co.*, 49 N. Y. 211; *Porter* v. *Smith*, 107 id. 533; *Aldridge* v. *Aldridge*, 120 id. 614; *Baird* v. *Mayor, etc.*, 96 id. 567.) The evidence sustains

the findings of the Special Term that there was no fraud. (*Nichols* v. *Pinner*, 18 N. Y. 285 ; *Nichols* v. *Michaels*, 23 id. 264 ; *Hennequin* v. *Naylor*, 24 id. 139 ; *Wright* v. *Brown*, 67 id. 4 ; *Brown* v. *Montgomery*, 20 id. 293 ; *Morris* v. *Talcott*, 96 id. 107 ; *Schufeldt* v. *Schnitzler*, 21 Hun, 462, 464 ; *Fish* v. *Payne*, 7 id. 586.) The trial judge properly refused to find for the appellant as to the materials furnished and covered by the two notes, except as to the last item of $369.74, under date of October 17, 1884. (Laws of 1862, chap. 482, § 2 ; *Mott* v. *Lansing*, 57 N. Y. 115 ; *King* v. *Greenway*, 71 id. 413.) There is no evidence to support the contention of the other side that the contracts for furnishing the iron formed one contract, which was not completed until all the iron was delivered, and that the last delivery (that of October seventeenth) was within the six months before the April attachments were issued. (*Mott* v. *Lansing*, 57 N. Y. 116.) Chapter 482, Laws of 1862, does not give a lien against an unfinished ship or vessel. (Laws of 1862, 956, § 1 ; *Carman* v. *Scribner*, 2 Houst. 44, 171 ; *Northrop* v. *The Pilot*, 6 Oreg. 297 ; *Kinsely* v. *Parker*, 34 Ill. 481.) Under the statute the lien will not lie in this case, because the debt was not contracted within this state. (*Phillips* v. *Myers*, 30 How. Pr. 186.) The lien, if there is any, is invalid, because claimed on both vessels, instead of a separate lien being claimed against each vessel. (*Parkinson* v. *Many*, 2 Grant, 521 ; *Birbeck* v. *Hoboken*, 17 Johns. 54.)

*E. A. Brewster* for respondent. The notes sent by Ward, Stanton & Co. to the Chester Rolling Mills and the Phœnix Iron Company did not suspend the lien — because such notes were sent with a fraudulent intent to obtain a credit and extension of time of payment, and thereby hinder and delay the claimants in the collection of their claims. The whole debt was, therefore, due at the time of the issuing of the February attachments. (*Roberts* v. *Fisher*, 43 N. Y. 159 ; *Wright* v. *Brown*, 67 id. 1 ; *Anonymous*, Id. 598, 600 ; *Hennequin* v. *Naylor*, 24 id. 139 ; *Roebling* v. *Duncan*, 8 Hun, 502 ; *Schu-*

*feldt* v. *Schnitzler*, 21 id. 462; *Weigand* v. *Sichel*, 4 Abb. Ct. App. Dec. 593.) The contracts were entire. (*Baker* v. *Higgins*, 21 N. Y. 397; *Mount* v. *Lyons*, 49 id. 552; *Kern* v. *Tupper*, 52 id. 550; *Veitman* v. *Thompson*, 3 id. 438; *Mott* v. *Lansing*, 57 id. 112; *Catlin* v. *Tobias*, 26 id. 217; *Brawley* v. *United States*, 96 U. S. 168; *Norrington* v. *Wright*, 115 id. 204; *Nightingale* v. *Eiseman*, 121 N. Y. 288; *McGraw* v. *Godfrey*, 16 Abb. Pr. 358.)

Bradley, J. This controversy between the respondent and the Hoboken Land and Improvement Company is in a proceeding instituted and conducted pursuant to chapter 482 of Laws 1862, entitled " An act to provide for the collection of demands against ships and vessels," amended by L. 1863, ch. 422.

On July 23, 1884, Ward, Stanton & Co., ship builders at Newburgh, by contract with the Hoboken, etc., Co., undertook the construction for the latter of two iron ferry-boats at the price of $150,000, and proceeded to construct them. Part of the materials for the work was ordered from the Phœnix Iron Co., and it delivered to them August 5th, 7th, 18th, 19th, September 11th, and October 17, 1884, quantities of angle iron at prices aggregating $4,958.72. The terms of sale were cash, which imports no credit. No payment was made for the iron. But on November 21, 1884, Ward, Stanton & Co. sent the Phœnix Co. by mail, their two notes, one at three and the other at four months, for the amount of the claim, and December 24, 1884, they made a general assignment for the benefit of their creditors. On application of the Phœnix Co. to a justice of the Supreme Court a warrant to enforce its lien for such debt pursuant to the provisions of the statute, was issued February 5, 1885, to the sheriff against such vessels, their tackle, apparel and furniture, and on the same day the sheriff attached and seized the two iron ferry-boats, etc., which were then incomplete. Afterwards an order was made by the same justice directing the sheriff to sell, and they were sold March 28, 1885, pursuant to that order and two others on the appli-

cations respectively of the Chester Rolling Mills and White-hall, also lien creditors of Ward, Stanton & Co. And on the application of the Phœnix Co., a second warrant was issued against the proceeds of the sale April 16, 1885. The Hoboken Co., as owner of the Hopatcong and Musconetcong, filed answers to those claims and proceedings of the Phœnix Co., and thus were presented the issues for trial. The Special Term determined that the warrant of February fifth was ineffectual, because the right to it was suspended by the then unmatured notes given and held for the debt, and the proceedings founded upon it were dismissed; and that upon the proceeding instituted April sixteenth the company was entitled to receive from the proceeds of the sale of the vessels satisfaction only of the last bill of iron delivered in October, 1884, amounting to $369.74, as the lien of the debt arising from the prior sales and deliveries had terminated when that proceeding was commenced. The statute upon that subject provides that the debt shall cease to be a lien at the expiration of six months after it was contracted, unless, etc. (Id. § 2.) The view of the General Term in support of the last proceeding was that all the iron was delivered in performance of a single contract, also that the first proceeding was sustainable upon the ground that the notes were sent to the Phœnix Co. with the intent on the part of the makers not to pay the debt. The first proposition is not sustained by the evidence. The Phœnix Co. did not undertake to deliver any specific amount of iron or the entire quantity requisite for any particular purpose. It agreed to furnish angle iron at specified prices, which was done from time to time upon the orders of Ward, Stanton & Co. The second is the main proposition and is one of fact. The contention of the appellant's counsel that the facts were not before the General Term is not supported. The paragraph following the evidence in the case that "the foregoing is all the testimony and proceedings upon the trial" is presumptively sufficient to meet the question so raised. Although a certain inventory and schedule introduced in evidence do not appear in the record, it is evident from what does appear

that they could add nothing essentially bearing upon any contested fact. It is also urged that the statute does not provide for a lien upon unfinished vessels; and that the debt in question was not contracted in this state, and, therefore, was not a lien upon them. These boats were partially constructed at the time they were attached, and the hulls were then in no condition to float in the water, and would not if launched. The statute provides that "whenever a debt amounting, etc., as to any * * * vessel shall be contracted by the master, owner, charterer, builder or consignee of any ship or vessel * * * within this state * * * on account of work done or materials or other articles furnished in this state towards the building, repairing, fitting, furnishing or equipping such ship or vessel * * * such debt shall be a lien upon such vessel, her tackle, apparel and furniture, and shall be preferred to all other liens thereon, except mariners' wages." The iron was furnished by the respondent as material towards the building of these vessels, and all of it, except a small portion had been put into the work. The hulls were on the stocks in the course of completion. They were unfinished vessels, and within the contemplation of the statute were subject to a lien of debt for work done and materials furnished towards building them. (*Phillips* v. *Wright*, 5 Sandf. 342.) And the debt was contracted by the owner within this state on account of materials furnished in this state. The Phœnix Iron Company was a corporation of the state of Pennsylvania, doing business at the city of Philadelphia, and the goods were there shipped to the builders and delivered to them at Newburgh in this state. The debt, within the meaning of the statute, was not contracted until the iron was delivered and then was contracted at the place of delivery. (*Viltman* v. *Thompson*, 3 N. Y. 438; *Crawford* v. *Collins*, 45 Barb. 269; *Mullin* v. *Hicks*, 49 id. 250.)

The materials were furnished for and used in the building of both vessels, which were being constructed at the same time and place, and no reason appears why they are not subject to the lien and to a single proceeding to enforce it against them.

The ferry-boats are within the term vessels as used in the statute referred to. The construction given in *Birkbeck* v. *Ferry Boats* (17 John. 54), to the statute in question in that case, has no necessary application to that under which the present proceedings were had. (*King* v. *Greenway*, 71 N. Y. 413.)

The remaining question is one of fact and has relation to the effect to be given to the notes sent by Ward, Stanton & Co. to the Phœnix Co. The acceptance of the notes apparently operated as an extension of the credit of the makers until maturity. And if such was the effect, the right of the creditor to enforce the lien it before had, was not only suspended during that time, but when the suspension terminated, the lien, as to most of its debt, had expired by lapse of time. (*Happy* v. *Mosher*, 48 N. Y. 313; *Mott* v. *Lansing*, 57 id. 112.) But it is contended on the part of the respondent that the notes did not have the effect to suspend the right of the creditor to take proceeding to enforce the lien because they were made and sent to it with the fraudulent intent on the part of the makers not to pay the debt. The General Term disagreed with the trial court on that question and reversed the judgment upon the facts as well as on the law; and this court must review the determination there made upon the questions of fact. (Code Civ. Pro. § 1338.) This section, as well as section 272 of the old Code, which was in this respect substantially the same, has received some judicial consideration, and the rules applicable to the review in such cases have been somewhat defined. (*Godfrey* v. *Moser*, 66 N. Y. 250; *Moran* v. *McLarty*, 75 id. 25; *Baird* v. *Mayor, etc.*, 96 id. 567.) And it is there held that the rule that where there is conflicting evidence or any evidence to sustain the finding of the trial court it is error for the General Term to reverse, has no application to such a case. "While proper allowance should be made in reviewing the facts, where testimony is conflicting, for the judgment of the trial court, who saw and heard the witnesses testify while upon the stand this is not entirely controlling, and the General Term must assume the responsi-

bility of examining the whole case and determine from the evidence where the truth lies." And in the *Baird* case the court added : " To justify a reversal it must appear that such findings were against the weight of evidence, or that the proofs so clearly preponderated in favor of a contrary result, that it can be said with a reasonable degree of certainty that the trial court erred in its conclusion." The doctrine of these cases was followed in *Aldridge* v. *Aldridge* (120 N. Y. 617), although the absence of a certificate that the record contained all the evidence, rendered it unnecessary to do more than to see that there was some evidence to sustain the findings of the trial court.

In *Nostrand* v. *Knight* (123 N. Y. 614) an expression in the opinion of the court delivered by Chief Judge Ruger seems to go further in support of the determination of the General Term in reversing the judgment of the trial court than does the view on that subject, expressed by the court in any previous case to which our attention has been called. It is that " the General Term had jurisdiction to review the conclusion of the trial court, both upon the facts and the law, and we cannot reverse its determination, unless upon examination, we conclude that there was such a preponderance of evidence in favor of the conclusions reached by the trial court as would have constituted error of law for it to have found otherwise than it did." But in the examination of the evidence, the court proceeded to the conclusion that there was a preponderance of evidence against the findings of the trial court, and the reversal by the General Term was sustained.

In the present case there was not much controversy about the facts other than the single one of the intent of the makers of the notes in sending them to the creditor. Ward, Stanton & Co. were then insolvent and knew they were so. The Phœnix Co. did not know it, but supposed the firm to be solvent. These facts alone and the failure of the debtors to inform their creditor of their condition of insolvency without the aid of intent on their part not to pay did not constitute fraud. (*Nichols* v. *Pinner*, 18 N. Y. 295 ; *Wright* v. *Brown*, 67 id. 1 ; *Morris* v. *Talcott*, 96 id. 100.) The sales were for

cash and not on credit, and when each of the bills of iron was delivered the Phœnix Co. was entitled to payment for it; and at the time the notes were made the debt arising from the sales was secured by lien upon the vessels. There was no previous understanding or agreement for making and taking of notes, but the debtors, without consultation with their creditor, voluntarily made and by mail sent the notes to the Phœnix Co., enclosed in a letter stating merely: "Please find enclosed two notes for act.;" then followed a statement of the notes as made for the amount of bill rendered November first, and interest added. The company received the notes, placed them in bank for collection, and retained the title to them. They were surrendered to the court for cancellation at the trial.

The firm of Ward, Stanton & Co., prior to November 15, 1884, had received of the Hoboken Co. upon the contract, $70,000. Up to that time the firm owned the unfinished vessels; and on that day a new contract was entered into between those parties, whereby the firm sold, transferred and delivered to Hoboken Co. those vessels and all material and personal property of any kind forming any part thereof, with all the wood-work, iron-work, materials and personal property of every description in the ship-yard. And the firm agreed to do the additional work and furnish such material as should be necessary to complete the ferry-boats as and at the time provided by the contract of July; and that when so completed, neither of them, nor any material for them purchased by the firm should be liable or subject to or affected by the debts of the latter. The Hoboken Co. paid to the firm $10,000 on the day this contract was made, $10,000 December second, and $10,000 December seventeenth, making together payments amounting to $100,000, leaving unpaid of the contract price, $50,000. There was evidence tending to prove, and the trial court found that the $80,000 unpaid at the time the contract of November fifteenth was made, was "sufficient to enable the firm to complete the boats and pay for all material and labor therefor;" and at the time the notes were sent, the firm owned tools which had cost it $100,000, on which there was a

mortgage of $25,000; and that it had other stock in the yard not covered by the mortgage or included in the sale of November fifteenth, which had cost it about $10,000. The then value of the property not included in the sale, does not necessarily appear, but there was evidence that the mortgaged property was afterwards sold upon the mortgage for about $19,000.

Prior to November twenty-first, and in September and October, several notes of the firm had been protested. At the time of mailing the notes to the Phœnix Co. the indebtedness of the firm was at least one hundred and fifty thousand dollars. Notwithstanding this situation one member of the firm testified as follows: " Q. At the time of giving the notes to the Phœnix Iron Co. was your firm solvent and able to pay its indebtedness or whatever was outstanding against them? A. Yes; we considered that we were. Q. As matter of fact, were you? A. We considered ourselves so." And he afterwards testified that the liabilities of the firm at the time of making the assignment were from $150,000 to $175,000; that the firm did not nor, so far as he knew, did any of its members own real estate; and that most of its property was covered by the mortgage before mentioned. The Phœnix Co. had no knowledge or information of the insolvency of the firm or of the transfer made by it to the Hoboken Co. until after the general assignment was made. Upon this state of facts the question arises as to the motive by which the firm may be deemed to have been actuated in sending the notes to the iron company. The firm knew that it was then in no condition to pay its debts, and it is difficult to see any solid foundation for reasonable expectation that it would be able to do so, especially without an unusual indulgence of creditors. So far as appears, Ward, Stanton & Co. were not in a business from which they could expect to realize such large profits as to reasonably justify hope of relief from their embarrassed financial condition. Why did they send the notes? They did it without any previous understanding with or consent of the company, and its consent to extend the credit depended

upon the acceptance of the notes. The company then had a lien upon the ferry-boats. The notes, if rendered effectual, would operate to suspend the lien and discharge it as to most of the debt. The firm had by the contract with and transfer to the Hoboken Co., undertaken to complete the boats free from all liens. It is not unreasonable to suppose that these boat and ship builders, who had been in the business in this state for twelve years, were advised of the statute relating to liens on ships and vessels for labor and materials. The most of their property was mortgaged. The money due on their contract would no more than complete its performance, and of that which they had received they paid none to the Phœnix Co. Under such circumstances the inference quite strongly arises that they did not expect when they gave the notes to pay them at maturity, and if they did not, they by the notes made a promise which they did not expect and consequently did not intend to perform. The fraud sufficient to relieve the respondent from the extension of credit which the notes purported to create is not such as is essential to constitute a criminal charge. (*Nichols* v. *Michael*, 23 N. Y. 264.) And there is no pretense of the latter imputation in this case. In *Wright* v. *Brown* (67 N. Y. 6), the court says : "Upon the case made by the plaintiffs the inference is legitimate that the defendant must have known when he purchased the barley that he could not continue in business and that he could not pay for it, and hence that he is chargeable with intent not to pay for it." In cases like the present, purposes are not usually directly proved, but are to be inferred from the circumstances which furnish the motive for the act. The credit which the firm sought by the notes to obtain was not, nor was any credit provided for in the contract of purchase. The debt was due. There was no reason for the acceptance of the notes by the iron company and the extension thereby of the credit, except for the accommodation of the makers, and upon the faith of their solvency and ability as well as purpose to pay.

The inference was by the evidence permitted that it was the purpose of the debtor firm to substantially defeat the lien,

which the company had on the boats, by suspension of the right to enforce it until to that extent it had expired. And in view of the then actual financial condition of the firm, known to the latter, and of the transfer then recently made by it, followed as it was by the general assignment, the conclusion of the General Term was justified that the firm was hopelessly insolvent when it sent the notes to the Phœnix Co., and then had knowledge that it was in that condition and could not and did not intend to pay the debt. And the determination that the inference of such facts was supported by a preponderance of evidence was also warranted.

The order should be affirmed and judgment absolute directed for the respondent.

All concur, except BROWN, J., not sitting.

Order affirmed and judgment absolute on stipulation in favor of plaintiff.