## MOORE v. NYE.

(Supreme Court, General Term, Third Department.   November 22. 1892.)

1. MORTGAGES—ABSOLUTE DEED.

In an action to have a referee's deed, given at a mortgage foreclosure sale, absolute on its face, declared a mortgage, brought by the mortgagor's vendee, who purchased subsequent to the sale, the mortgagor's attorney testified that prior to the mortgage sale he had an arrangement with the mortgagor to bid off the farm in question in his own name, and wait on the mortgagor till he could pay for it, which arrangement was known to defendant, the mortgagor's sister, who thereupon offered to do the same thing, after which the witness procured the consent of the mortgagor thereto, and the property was bid off in the defendant's name, she taking security for the amount paid from the mortgagor, who thereafter continued in possession till his conveyance to plaintiff, at which time witness overheard defendant say to plaintiff that she had received her money in full, and had no further claim on the premises; and this statement was corroborated by plaintiff, though denied by defendant.   Defendant's testimony showed that after the mortgage sale, and before the sale to plaintiff, she realized on the securities in her hands an amount equal to the amount advanced on the foreclosure sale.   *Held*, that the facts show the referee's deed to be in fact a mortgage, and that plaintiff relied on defendant's statement that she had no claim on the farm at the time he purchased it.

2. SAME—APPLICATION OF PAYMENTS.

Where it did not appear that defendant held any other claim against the mortgagor, on which the amount she received should be applied, the law would apply the same to the satisfaction of the mortgage.

3. SAME—ESTOPPEL BY REPRESENTATIONS.

Plaintiff having relied on defendant's statement that she had no claim on the farm at the time of the purchase thereof, she is estopped from setting up any claim therein to the prejudice of plaintiff.

Appeal from special term, Clinton county.

Action by John N. Moore against Laura M. Nye.   Judgment for defendant.   Plaintiff appeals.   Reversed.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

Shedden & Booth, (L. L. Shedden, of counsel,) for appellant.

Corbin & Rowe, (Royal Corbin, of counsel,) for respondent.

MAYHAM, P. J.   This is an appeal from a judgment entered upon the decision of the trial judge dismissing the plaintiff's complaint.   The action was brought to have a referee's deed in a foreclosure sale, absolute on its face, declared to be a mortgage, and canceled of record, and to restrain the defendant, who was the grantee in such deed, from prosecuting summary proceedings for the recovery of the possession of the premises.   The first and the principal question raised on this appeal, and the one which ought to be decisive of this case, is whether this deed, at the time it was given, was in fact, as between the purchaser at the referee's sale and the owner of the equity of redemption, a mort-

gage in fact, although a deed in form. · The learned trial judge has held it was not, and we are asked on this appeal to review that conclusion.

Great weight, in reviewing the determination of a question of fact in the trial court, is due to that tribunal; and in a proper case this court is called upon to review, and sometimes to reverse, that conclusion. Ensign v. Ensign, 120 N. Y. 655, 24 N. E. Rep. 942; Nostrand v. Knight, 123 N. Y. 614, 25 N. E. Rep. 949; Iron Co. v. The Hopatcong, 127 N. Y. 206, 27 N. E. Rep. 841. The testimony relied on by the plaintiff to establish the claim that this deed was intended as a mortgage is that of Averill, the attorney, who swears that he had an arrangement with Samuel M. Moore and wife, the mortgagors in possession, to bid off the farm in question for Moore on the referee's sale, and that a short time before the sale, at the solicitation of her son, he had an interview with the defendant, in which he informed her of his arrangement to bid off the property for Moore, and furnish the money to pay the mortgage claim, and wait on them until it could be paid out of the property. She said she thought it would be better for her to do that, as she was a sister of Samuel. Averill swears that he told defendant that he had promised Moore and wife that he would take the title in his own name, and wait on him any length of time until he could pay it, and he did not know how they would feel about her taking it, but that he would see Samuel and wife, and, if they were willing, he would consent that defendant should take it in her name. He also testifies to securing their consent, and communicating that fact to the defendant, and that she bid in the property under that arrangement, and took the deed in her own name, and as a part of the transaction, and as security for her advancement, took an assignment of a Pecor mortgage, on which there was due $400 held by Samuel. · He also testifies, in substance, that, at the time, plaintiff took title from Samuel, and agreed to support him and his wife. He heard a conversation between the plaintiff and defendant, in which the defendant stated, substantially, that she had had her money in full for what she had advanced, and that she had no further claim on this place; and this statement is corroborated by the plaintiff. It appears by the testimony of the defendant that she received the $400 on the assigned mortgage, and $200 rent on assigned lease; and the undisputed evidence shows that Samuel Moore continued in possession after the sale, and down to the time of his conveyance to the plaintiff. The defendant, in her testimony, claims that her brother Samuel remained in possession of the farm by her permission, but she concedes that she received in rent, and on the mortgage assigned to her, the amount paid by her on the foreclosure sale; and it does not appear that the defendant had any other claim on which the money received by her could properly be applied. The law would therefore apply this money in satisfaction of the mortgage, if this deed was in the nature of a mortgage.

On a careful examination of all of the evidence, we are of the opinion that the deed, although absolute upon its face, was, as between Samuel M. Moore and the defendant, only a mortgage, and that, on the payment of the consideration for the same out of the property of the mortgagor,

he was reinvested with his title to the premises, and, being in possession at the time of his conveyance to the plaintiff, the plaintiff became invested with his interest in these premises, and as against the mortgagee, whose mortgage was paid, was entitled to the possession of these premises.

There is another view in which I think, as against the plaintiff, the defendant would be estopped from asserting her title against this plaintiff: At the time of the purchase from his father, Samuel M. Moore, by the plaintiff, the defendant disclaimed any interest in, or claim to, these premises. This is proved by the oath of the plaintiff and that of Averill. It is true that the defendant denies that she ever made such admission; but if, in view of her interest and that of the plaintiff in the result of this suit, we balance one against the other, both being equally interested, still we have the apparently disinterested evidence of Averill establishing the statement. Averill swears that, before the deed was executed to the plaintiff, he went with him to the defendant, and told her of plaintiff's contemplated purchase, and of the whole transaction, and that plaintiff said to defendant at that time that he had come to her to see if she had any claim on the property, before he did anything with his father, and that defendant then and there stated that she had no claim upon the property whatever; that she had received from the property and the Pecor mortgage all she had paid out, and had nothing more to do with the property at all,—and advised the plaintiff to make the proposed arrangement with his father. If this did in fact occur, it cannot be said that the plaintiff did not rely upon her statement. The only motive he could have had in interviewing the defendant upon that subject seems to have been to ascertain whether or not she made any claim to this property under her purchase, after she had been paid the money she invested in the property. We think this evidence is sufficient to create an estoppel, and that she cannot now be heard to assert her title, after inducing the plaintiff to purchase upon the strength of her disclaimer of interest. In Trustees v. Smith, (N. Y. App.) 23 N. E. Rep. 1002, the court, in discussing the question of estoppel in pais, say: "When a party, either by his declarations or conduct, has induced a third person to act in a particular manner, he will not afterwards be permitted to deny the truth of the admission, if the consequences would be to work an injury to such third person, or to some one claiming under him." And in support of this proposition the court cites a series of decisions, from that of Wendell v. Van Rensselaer, 1 Johns. Ch. 344, to Rubber Co. v. Rothery, 107 N. Y. 310, 14 N. E. Rep. 269, and the court adds that: "The general rule, deduced from all the authorities, is that if one is induced to purchase lands by the act or representation of another, designed to influence his conduct, and creating a reasonable belief on his part, under which he acts, that he is thereby acquiring a valid title to the same, the party who thus influenced him is estopped from setting up his own title, existing at the time of the purchase, against that of the purchaser." Applying that rule to this case, the plaintiff's title, purchased by his father, cannot be defeated by the defendant under her deed held at the time, which the plaintiff had a right, from her statement, to believe was but a mortgage, and had been satisfied by pay-

ment.    In Thompson v. Simpson, 128 N. Y. 288; 28 N. E. Rep. 632, the court say: "A party is concluded from denying his own acts or admissions, which are expressly designed to influence the conduct of another, and did so influence it, and where such denial will operate to the injury of the latter."    "An estoppel may arise although there is no designed fraud on the part of the person so sought to be estopped."    It is true that in the case at bar the court say: "It is evident that the plaintiff did not rely upon the representations of the defendant."    We think the facts in this case clearly establish that he did rely upon such representations.

The plaintiff offered to prove in express terms, by his own oath, that he did rely upon such statements, but this evidence was objected to by the defendant, and excluded by the court.    It may be seriously questioned in this case whether the exclusion of the evidence was not error. In Bayliss v. Cockcroft, 81 N. Y. 371, the court held that it was no error to permit the plaintiff to testify to his belief of the truth of a matter upon which he was called to pass in a business transaction.    So in McKown v. Hunter, 30 N. Y. 625, when the defendant was sued for malicious prosecution for making a complaint against another for perjury, he was permitted to state that, at the time he made the charge, he believed it to be true; and so in many cases when the motive or intent which influenced the act is the subject of inquiry, that may be stated by the party as a witness; and while, as the court say in Bayliss v. Cockcroft, supra, the receipt of this kind of evidence is not to be encouraged, yet in certain cases it is allowable; and, if in any case this species of evidence is allowable, it is difficult to see why this is not such case.    But, whether the exclusion of the evidence was error or not, we think the evidence received sufficient to establish the fact that the plaintiff in this case relied upon the statement of the defendant that she had no claim to or interest in this farm, and that as to him she is estopped from now claiming, to his prejudice, that she owns this farm.    The judgment should be reversed, and a new trial ordered, costs to abide the event.    All concur.