MINNEAPOLIS, ST. P. & S. S. M. RY. CO. v. MILNER et al.

(Circuit Court, W. D. Michigan, N. D. July 29, 1893.)

1. CONSTITUTIONAL LAW — REGULATION OF COMMERCE — STATE QUARANTINE LAWS.

The detention and disinfection of immigrants by order of a state board of health, with the purpose of preventing infectious disease, is not a regulation of foreign commerce by a state, within the meaning of the prohibition in Const. U. S. art. 1, § 8. Brown v. Maryland, 12 Wheat. 419, followed.

2. SAME—TREATIES.

The right of the several states to establish and enforce quarantine regulations is not limited by any existing treaty between the United States and Norway and Sweden.

3. SAME—CRIMINAL PROSECUTION—INJUNCTION.
   A federal court has no power to restrain by injunction a criminal prosecution by a state under an unconstitutional statute of such state.

4. SAME—QUARANTINE REGULATIONS.
   In enforcing its quarantine regulations a state may detain immigrants from noninfected places who have traveled with others from infected localities.

5. SAME—DETAINING PERSONS PASSED BY FEDERAL OFFICERS.
   The enforcement of the quarantine regulations of a state against immigrants cannot be restrained by injunction in a federal court, although the persons detained thereunder have been examined and passed by federal health officers.

6. SAME—COSTS OF INSPECTION.
   The costs and charges of quarantine inspection under state laws may lawfully be imposed upon the carrier which brings the suspected passengers into the country, as being incident to the business in which it is engaged.

In Equity. Bill by the Minneapolis, St. Paul & Sault Ste. Marie Railway Company against Samuel G. Milner and others, constituting the Michigan state board of health, to restrain respondents from enforcing the state quarantine regulations. On motion for preliminary injunction. Denied.

E. C. Chapin and John D. Conley, for plaintiff.

A. A. Ellis, for defendants.

Before SEVERENS and SAGE, District Judges.

PER CURIAM. The bill sets forth that the complainant, a corporation of the state of Michigan, is, and has been for several years past, engaged, under a traffic arrangement with the Canadian Pacific Railway Company, in the transportation of passengers, on through tickets from Quebec, westward through Canada and over the line of the complainant's railway to and through the states of Michigan, Wisconsin, Minnesota, and North Dakota; also eastward from those states through Canada to Quebec; a large portion of the passengers westward being persons traveling from Norway and Sweden to points in said states.

The defendants, it is averred, constitute the state board of health of Michigan, assuming to exercise authority under an act passed by the legislature of said state, and approved June 20, 1885, entitled "An act to provide for the prevention of the introduction and spread of cholera and 'other dangerous communicable diseases,' as amended by 'An act approved April 26th, 1893.'" The bill has attached to it as exhibits a copy of each of said acts, and of certain rules adopted by the board, purported to be issued under and by virtue of the authority conferred by the amendatory act. It is further averred that the board, acting through its secretary and one of its inspectors, and in pursuance of said rules, is daily detaining and attempting to detain passengers on the Canadian Pacific Railway at the point opposite Sault Ste. Marie, Mich., and prohibiting their entering the state of Michigan until they have undergone the quarantine detention; and until the disinfection of their baggage as prescribed in said rules. It is averred that this deten-

tion, examination, and process of disinfection of baggage is applied to all emigrants, irrespective of whether they came from an infected or healthy locality abroad, and without regard to· their point of destination. It is further· averred that all said emigrants and travelers have been, before said detention, inspected by United States officials detailed for the purpose, and that complainant has not received nor permitted to be conveyed within the state of Michigan any passenger, traveler, or emigrant coming from any European port through the dominion of Canada, excepting such as have presented· a certificate of inspection of the United States inspector. It is also averred that the board is threatening to arrest officials and employes of complainant unless complainant shall submit to and comply with the requirements of the board.

The claim is that the rules and action of the board of health are in direct violation of section 8, art. 1, of the constitution of the United States, in that they attempt. to regulate and prohibit commerce with foreign nations; and that they are also in violation of the treaty made by and between the United States and Norway and Sweden, and now existing; also that they are over, above, and beyond the powers conferred upon the board by said act and amendatory act of the legislature of Michigan. The bill then sets forth averments of irreparable damages, and prays for an injunction.

The motion for a preliminary injunction will be overruled for the following reasons:

1. In Brown v. Maryland, 13 Wheat. 419--433, Chief Justice Marshall recognized that the removal or destruction of infectious or unsound articles was undoubtedly an exercise of the police power of the state, and an exception to the prohibition resulting from the exclusive power of congress to regulate the operations of foreign and interstate commerce; and that laws of the United States expressly sanction the health laws of the several states. In the License Cases, 5 How. 504, 576, Chief Justice Taney declared that "it must be remembered that disease, pestilence, and pauperism are not subjects of commerce, although sometimes among the attendant evils. They are not things to be regulated and trafficked in, but to be prevented as far as human foresight or human means can guard against them." In Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. Rep. 851, Justice Bradley referred to these cases with approval, and stated with great clearness and force the distinction between the exercise of its police power by a state and an attempt to legislate upon matters of interstate or foreign commerce, which are exclusively within the power of the federal government. These authorities render it unnecessary to refer particularly to the cases cited for the complainant. It is sufficient to say that they all relate to state enactments concerning articles of commerce, and hence are not applicable here. Moreover, the quarantine act of congress, approved February 15, 1893, expressly recognizes the validity of state laws, and in section 3 requires the supervising surgeon general of the marine hospital service to. co-operate with

and aid state and municipal boards of health in the execution and enforcement of their rules and regulations.

2. We find nothing in any existing treaty with Norway and Sweden in conflict with the institution or enforcement by any one or more of the states of this Union of quarantine regulations.

3. We do not deem it necessary to express an opinion whether the provision of the Michigan statute making it a misdemeanor to violate the rules of the state board of health, adopted in pursuance of the act, is in conflict with the constitution of Michigan, for we should not, even if we were of opinion that it is unconstitutional, undertake to issue an injunction against criminal prosecution by the state. That the legislature might authorize the board to adopt rules is, we think, beyond question. Such rules are essential to the proper enforcement of the law.

4. To the objection that passengers from noninfected countries and localities are detained, the answer is that such detentions are, in the nature of the case, to a certain extent unavoidable; and passengers from such countries and localities may have become properly subject to detention by reason of having mingled with others who could communicate pestilence or disease to which they themselves had been exposed or subjected. An opportunity for examination and inspection is indispensable also.

5. The objection that passengers who had certificates from United States inspectors were detained is not tenable. The states may exercise their police power according to their own discretion, and by means of their own officials and methods. The inconvenience resulting to emigrants and travelers from being halted and subjected to examination and detention at state lines is of trifling importance at a time when every effort is required and is being put forth to prevent the introduction and spread of pestilential and communicable diseases.

The costs and charges which are incurred in such quarantine inspection may lawfully be imposed on the railway company as being incident to the business in which it is engaged. The costs of the motion will be taxed to the complainant.