---

In the Matter of the Application of WILLIAM H. SMITH and Another, Respondents, for a Writ of Habeas Corpus Directed to Z. TAYLOR EMERY, M., D., Health Commissioner 'of the City of Brooklyn, Appellant.

*Police powers — execution of quarantine laws and measures relating to the public health — when constitutional rights are not invaded thereby — isolation of persons exposed to smallpox — section 24 of article 2 of chapter 661 of 1893.*

The execution of quarantine laws and measures relating to the public health may result in the deprivation of personal liberty and the destruction of property, but it by no means follows that any constitutional rights are invaded or abridged by the enforcement thereof.

Due process of law, as the term is used in the Constitution, requires only conformity to the rules and methods of free government, and the omission to exercise powers interdicted by the Constitution, or delegated to the other great departments of government.

The Constitution does not guarantee the inviolability of the right to trial by jury in all cases, but only in " all cases in which it has heretofore been used ; " and prior to the Constitution of 1846 a jury was not the ordinary tribunal to determine questions in relation to the public health where the public interests required action to be taken.

Where there exists great and imminent peril to the public health of the city of Brooklyn by reason of impending pestilence from the spread of smallpox, the board of health of such city is bound to guard against the introduction of that disease by the exercise of proper and vigilant medical inspection and control of all persons and things arriving in that city from infected places, or which from any cause are liable to communicate contagion. It becomes the duty of such board, under the provisions of section 24 of article 2 of chapter 661 of the Laws

of 1893, to isolate all persons and things infected with or exposed to smallpox, and the isolation and detention of a person exposed to such disease is within the scope of the powers and duties of such board.

APPEAL by Z. Taylor Emery, M. D., health commissioner of the city of Brooklyn, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 1st day of June, 1894, directing the appellant to discharge the relators from custody.

*Alexander H. Van Cott,* for the appellant.

*Horace Graves,* for the respondents.

DYKMAN, J.:

This is an appeal from an order discharging the relators from detention. The proceeding was by habeas corpus, and the order was made upon the petition of the relators and the return of the defendant. The relators did not traverse the return, but it is to be gathered from the appeal book that the case proceeded upon the theory of a demurrer *ore tenus* to the return.

The return consists of the statement of the commissioner, the affidavit of the department's vaccinator, and the declaration, approval and proclamation of the health commissioner, the mayor of the city and the president of the Kings County Medical Society, made in pursuance of section 5, title 12, chapter 583 of the Laws of 1888.

The proclamation was this: "We, the Mayor of the City of Brooklyn and the President of the Medical Society of the County of Kings, do hereby approve the taking and doing of the measures and acts above declared necessary by the Commissioner of Health of the said City of Brooklyn, and we, the said Mayor, President and Commissioner, do hereby declare that the peril from an impending epidemic of smallpox shall be deemed to exist, and to exist for the period from January 1st, 1894, to and inclusive of July 1st, 1894. And we do hereby proclaim the same to have existed, and to so exist for said period. Dated Brooklyn, N. Y., May 4th, 1894." Signed by the mayor, president of the medical society and the commissioner of health.

The measure declared necessary, to which a reference was made in the proclamation, was the declaration of the commissioner of health, stating that thorough and sufficient vaccination of every citi-

zen who had not been successfully vaccinated within the last three months, as in the judgment of the commissioner of health rendered such person immune, should be procured.

And whenever any person in said city should refuse to be so vaccinated, such person should be immediately quarantined, and detained in quarantine until he consented to such vaccination. The return of the commissioner to the writ is as follows : ·

" Obedient to the command of the annexed writ, I hereby certify and return that before the said writ came to me, on the 3d day of May, 1894, at four o'clock in the afternoon, William H. Smith and Thomas Cummings were placed under quarantine by my orders, as such Commissioner of Health, in the premises Nos. 129–131 Franklin street, in the City of Brooklyn, under and by virtue of the authority vested by law in me to take such precautions as are necessary for the protection of the public health against smallpox. That each of the said persons was and now is so detained in quarantine in the said premises by reason of his refusal to permit a duly authorized vaccinator of said Department of Health, or some reputable physician of the City of Brooklyn, to vaccinate him.

" That as appears by the affidavits of Dr. Henry L. Shelling, Dr. George Wieseckel and Dr. Louis Hess, all verified the 4th day of May, 1894, and annexed hereto, the said doctors severally requested the said persons detained as aforesaid to submit to vaccination, and that the said persons refused the request of each of the said physicians and still continue to refuse the same.

" That since the month of December, 1893, smallpox has been present to an alarming extent in said City of Brooklyn. That during the months of January, February, March, April and May, 1894, the said disease has been epidemic in the city, and the utmost precaution and the most thorough preventive measures have been necessary in order to prevent the spread of the disease beyond control.

" That it is a well-established scientific fact that vaccination is a preventive of said disease in the person vaccinated, and it has been for many years demonstrated that thorough vaccination of persons in crowded centres is indispensable to the prevention of epidemic smallpox. That in pursuance of the authority vested in me by law, I have adopted every possible and proper means for securing such

thorough vaccination of the citizens of Brooklyn in order to prevent the menaced spread of smallpox therein.

" That as I was informed and believed, before ordering the quarantine to be placed upon the said premises and that said persons be detained therein, the said William H. Smith is the proprietor of an express delivery business, and that the said Cummings is employed by him in said business, and that they are both actively engaged in the prosecution thereof in the cities of New York and Brooklyn, and especially in Greenpoint and the Eastern District of said City of Brooklyn, which latter has been one of the worst infected centres of said city. That said business is of a general nature, and may include the carrying of trunks, bedding, furniture and numerous other articles which may come from infected centres and be infected with the germs of smallpox, and it became at once apparent to me that the said Smith and Cummings were unusually exposed to such contagion, and that they might be seized therewith, and by communication with others spread the same, and that it was, therefore, of special importance that they should be vaccinated at once.

" That I, therefore, ordered quarantine to be placed upon the said premises, and that said persons be detained therein as aforesaid until they consented to be vaccinated either by a duly authorized vaccinator of the said Department or by some reputable physician. That I took such measures in order to protect the citizens of Brooklyn, and in the full belief that if the said Smith and Cummings were permitted to continue in their said business without being so vaccinated they might be the means of most serious fatal consequences to other citizens with whom they might thereafter come in contact, the danger thereof being especially apparent to me from the fact that, as appears by the records of said department, there has been at least twenty-eight (28) cases of smallpox in and about the seventeenth ward of said city since the 1st day of April, 1894, a list of the names and localities of which cases is hereto appended, marked ' Exhibit A.' That a proclamation of great and imminent peril has been duly made, pursuant to section 5 of title 18 * of chapter 583 of the Laws of 1888, by the mayor, the president of the Medical Society of the County of Kings, and a copy thereof is hereto annexed, marked ' Exhibit B.' All of which I certify, and have here the

---

* Or title 12.— [REP.

bodies of the said William H. Smith and Thomas Cummings as by the said writ to me commanded.

"Dated BROOKLYN, N. Y., *May* 4, 1894.

"Z. TAYLOR EMERY, M. D.,

"*Commissioner of Health.*"

Chapter 661, article 2, section 24 of the Laws of 1893 is as follows : "Section 24. Contagious and Infectious Diseases. Every such local board of health shall guard against the introduction of contagious and infectious diseases by the exercise of proper and vigilant medical inspection and control of all persons and things arriving in the municipality from infected places, or which from any cause are liable to communicate contagion.

"It shall require the isolation of all persons and things infected with or exposed to such diseases, and provide suitable places for the treatment and care of sick persons who cannot otherwise be provided for. * * * It shall provide at stated intervals a suitable supply of vaccine virus of a quality and from a source approved by the State Board of Health, and, during an actual epidemic of smallpox, obtain fresh supplies of such virus at intervals not exceeding one week, and at all times provide thorough and safe vaccination for all persons in need of the same."

Section 5 of title 12 of chapter 583 of the Laws of 1888 : In the presence of great and imminent peril to public health of the city of Brooklyn by reason of impending pestilence, it shall be the duty of said commissioner to take such measures and do and order and cause to be done such acts and make such expenditures (beyond those duly estimated for as provided) for the preservation of the public health from such impending pestilence as he may, in good faith, declare the public safety and health to demand, and the mayor of the said city and the president of the Medical Society of Kings County shall also, in writing, approve. And such peril shall not be deemed to exist except when and for such period of time as the mayor, president of the medical society and health commissioner shall by proclamation declare."

The preservation of the public health is of primary importance, and boards of health have been organized for that purpose, under the police power of the State, with power to take necessary measures and precautions to secure sanitation and health.

It is a curious fact in connection with this case that on the 4th day of April, 1778, at the first session of the Legislature under the formation of the State government, a law was passed to prevent the spreading of smallpox, by which the justices of the peace were authorized to appoint houses where persons infected with smallpox might reside, and providing for the forcible removal of such persons to such houses.    (Laws of 1778, chap. 36.)

On the 1st day of May, 1784, soon after the close of the Revolutionary war, the Legislature passed the first quarantine law of the State, entitled "An act to prevent the bringing in and spreading of infectious distempers in this State."    By that statute it was provided that all vessels having on board any person infected with any contagious distemper, or coming from any place infected with such contagious diseases, should not come into any port of this State, and should not come nearer to New York than Bedloe's Island, and should be obliged to perform quarantine under certain specified regulations.    (Chap. 57, Laws of 1784.)    The same kind of legislation has continued during the entire history of the State.    "From the earliest organization of the government the absolute control over persons and property, so far as the public health was concerned, was vested by boards or officers who exercised a summary jurisdiction over the subject, and who were not bound to wait the slow course of the law, and that juries have never been used in this class of cases. The governor, the mayor, health officers, under various names, were the persons intrusted with the execution of this important public function, and they were always empowered to act in a summary manner." (*Metropolitan Board of Health* v. *Heister*, 37 N. Y. 661.)

" In enforcing its quarantine regulations a State may detain immigrants from non-infected places who have traveled with others from infected localities."    (*Milner's Case*, 57 Fed. Rep. 276.)

The execution of such laws may result in the deprivation of personal liberty and the destruction of property, but it by no means follows that any constitutional rights have been invaded or abridged within the meaning of the Constitution.    Due process of law, as the term is used in that instrument, requires only conformity to the rules and methods of free government and the omission to exercise powers interdicted by the Constitution or delegated to the other great departments of government.    The Constitution does not

guarantee the inviolability of the right to trial by jury in all cases, but only in " all cases in which it has heretofore been used." " In questions relating to the public health, where the public interests required action to be taken, a jury had not been the ordinary tribunal to determine such questions prior to the Constitution of 1846." (*Board of Health* v. *Heister*, *supra*.)

In the same case it was held : Health officers intrusted with the important function of executing the laws enacted for the protection of public health were always empowered to act in a summary manner. This principle long antedates the Constitution, and, being a law of the land at the time the Constitution was adopted, the Legislature has continued to apply it to the enactment of statutes conferring this summary jurisdiction, and the courts have repeatedly affirmed this power in the Legislature. The law of the land is due process of law. (CURTIS, J., in *Murrays' Lessee* v. *Hob. L. & Imp. Co.*, 18 How. [U. S.] 276.)

" If the statute in question was within the power of the Legislature to enact, the proceedings against the relator were due process of law. He was imprisoned by virtue of pre-existing law, informed of the charge made against him and was heard in person and by counsel in his defense. The proceedings need not be according to the course of the common law." (RAPALLO, J., in *People ex rel. McDonald* v. *Keeler*, 99 N. Y. 479 ; *Happy* v. *Mosher*, 48 id. 313 ; *People ex rel. Witherbee* v. *Supervisors*, 70 id. 228.)

The facts stated in the proclamation, that there was " great and imminent peril to the public health of the City of Brooklyn by reason of impending pestilence from the further spread of the disease," standing uncontradicted, required the board of health to guard against the introduction of that disease by the exercise of proper and vigilant medical inspection and control of all persons and things arriving in the city from infected places, or which, from any cause, were liable to communicate contagion. It became the duty of the board, under section 24 quoted above, to isolate all persons and things infected with or exposed to smallpox. These relators fell under the control of the board of health ; they came to the city from infected places, and they were liable to communicate contagion ; they were, therefore, proper subjects for isolation, and they were quarantined and detained in their premises. That isolation and deten-

tion was clearly within the scope of the powers and duties of the board, and that is all it did. The board did not require the relators to be vaccinated, and that seems to be the error into which the relators have fallen. They seem to assume that the board of health intended to compel them to be vaccinated, but the acts of the board admit of no such construction. There was neither coercion nor compulsion. They were isolated and deprived of their freedom because they had been exposed to smallpox and were liable to be seized therewith, and, by communication with others, to spread the disease. That was a legitimate exercise of the power and authority vested in the board by statute, and it was unnecessary to prescribe any conditions upon which the relators could terminate their isolation; that it was done entirely for their benefit and for no other purpose. If they availed themselves of the privileges tendered to them their acceptance would terminate their quarantine and their refusal would leave them in isolation until July 1, 1894, the time mentioned in the mayor's proclamation. They refused the condition and instituted this proceeding. The prevention of smallpox is of such paramount importance as to justify all reasonable means for its accomplishment. In the age of the world in which we live, security from the awful pestilence of smallpox, by reason of the practice of vaccination as a preventative, is imperative; its efficacy has been recognized by physicians of all schools for nearly a century. Dr. Jenner, its discoverer, was immortalized by its introduction. Vaccination was accepted and practiced by the entire civilized world within six years from the time of its first discovery, and it has been in universal use from that time until the present. It is stated in the return, and in the statement is uncontradicted, that it is a well-established scientific fact that vaccination is a preventive of smallpox in the person vaccinated, and it has been for many years demonstrated that thorough vaccination of persons in crowded centers is indispensable to the prevention of epidemic smallpox.

This statement as we have narrated is in accord with the advanced thought of the age in which we live, and it receives our concurrence. We have decided at the present term of this court that vaccination may be required as a condition precedent to the admission of children to the common schools of the city of Brooklyn.

The propriety and wisdom of the course pursued by the board is

beyond criticism. Its acts have all been within the lines of statutory authority, and they have been discreet and have acted in evident good faith in the presence of an impending pestilential danger.

The order should be reversed, with ten dollars costs and disbursements.

PRATT, J., concurred; CULLEN, J., not voting.

Order reversed, with ten dollars costs and disbursements.